**James D. HODGSON, Secretary of Labor, Plaintiff-Appellee,**

**v.**

**LOCAL UNIONS NO. 18, etc., INTERNATIONAL UNION OF OPERATING ENGINEERS, Defendant-Appellant.**

**No. 20470.**

United States Court of Appeals, Sixth Circuit.

April 9, 1971.

Laurence Gold, Washington, D. C., for defendant-appellant; J. Albert Woll, Washington, D. C., William Patrick Clyne, Cleveland, Ohio, on brief.

Raymond D. Battocchi, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellee; William D. Ruckelshaus, Asst. Atty. Gen., Robert V. Zener, Walter H. Fleischer, Attys., Dept. of Justice, Washington, D. C., Robert B. Krupansky, U. S. Atty., Cleveland, Ohio, on brief.

Before PHILLIPS, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

PHILLIPS, Chief Judge.

This appeal presents the question of what is a reasonable qualification on the right to hold office in a labor union under the provisions of § 401(e) of the Labor-Management Reporting and Disclosure Act of 1959 (the Act), 29 U.S.C. § 481(e). The international constitution governing the appellant union (Local 18) contains a provision precluding members from running for union office unless they transfer from branch locals to a parent local at a cost prescribed by applicable by-laws at $75 to $90. This requirement disqualifies more than sixty per cent of all Local 18 members from running for office. District Judge Frank J. Battisti held that this qualification is unreasonable under § 401(e) of the Act.

The action was brought by the Secretary of Labor, pursuant to § 402(b) of the Act, 29 U.S.C. § 482(b), to set aside the August 1965 election of officers of Local 18. The District Court declared the election void and ordered that the union conduct a new election of its officers under the supervision of the Secretary in accordance with the provisions of Title IV of the Act. It was further ordered that the new election be held so far as lawful and practical in conformity with the union's constitution, except that the requirement that candidates for local offices be members of a parent local not be applied or enforced in the supervised election.

We affirm.

Section 401(e) of the Act, 29 U.S.C. § 481(e) provides in pertinent part as follows:

"In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and *every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed)* and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof." (Emphasis added.)

The dispositive issue before the court is whether Local 18's eligibility requirement permitting only members of its Parent Local to hold union office is a "reasonable qualification uniformly imposed" on the right of every member in good standing to seek and hold union office.[1]

## I

Local 18 is subdivided into a Parent Local and three sub-locals with membership, as of July 1, 1965, immediately prior to the election in question, as follows:

| Parent Local | 4349 members |
|---|---|
| Local 18A | 579 members |
| Local 18B | 4840 members |
| Local 18C | 1571 members |

Members of all four subdivisions are members in good standing of Local 18 but as previously stated only members of the Parent Local are eligible to run for union office. The sub-locals do not have officers.

Members of Local 18 sub-locals may become eligible to run for union office by transferring to the Parent Local.[2] In order to transfer to the Parent Local,

---

1. Section 504, 29 U.S.C. § 504, referred to in 29 U.S.C. § 481(e), makes members of the Communist Party and persons convicted of certain crimes ineligible to hold union office and is not relevant to the issue before the court.

2. Both the Secretary of Labor and Local 18 agree that the Union's additional requirement that tranferees to the Parent Local must wait one year before running for union office is not before the court on this appeal. Since we hold that the requirement of membership in the Parent Local is unreasonable, the validity of the one-year requirement becomes moot.

a sub-local member must pay the Parent Local's initiation fee, less the initiation fee he had already paid to the sub-local.[3]

The initiation fee for each of Local 18's subdivisions is as follows:

| | |
|---|---|
| Parent Local | $100 |
| Local 18A | $ 25 |
| Local 18B | $ 25 |
| Local 18C | $ 10 |

Thus, a member transferring to the Parent Local from Local 18A or Local 18B would be required to pay an additional $75, and from Local 18C, $90, to satisfy the Parent Local initiation fee of $100. Any member of a local subdivision is required to make such a payment in order to become a candidate for union office.

The only benefits received by members of the Parent Local not shared by members of the sub-locals are:

(1) An additional $500 in life insurance;

(2) A paid-up life membership after 30 years (five of which years may be as a member of a branch); and

(3) The right to run for and hold union office.

Otherwise, all members of Local 18 enjoy identical benefits from union membership and may participate fully in union government.

## II

Local 18's restrictive eligibility rule precludes over sixty per cent of its members from seeking union office. The Supreme Court held in Wirtz v. Hotel Employees Union Local 6, 391 U.S. 492, 499, 88 S.Ct. 1743, 1748, 20 L.Ed.2d 763, that:

"Congress plainly did not intend that the authorization in § 401(e) of 'reasonable qualifications uniformly imposed' should be given a broad reach. The contrary is implicit in the legislative history of the section and in its wording that 'every member in good standing shall be eligible to be a candidate and to hold office * * *.' This conclusion is buttressed by other provisions of the Act which stress freedom of members to nominate candidates for office. Unduly restrictive candidacy qualifications can result in the abuses of entrenched leadership that the LMRDA was expressly enacted to curb. The check of democratic elections as a preventive measure is seriously impaired by candidacy qualifications which substantially deplete the ranks of those who might run in opposition to incumbents." (Footnote omitted.)

We hold that the rule in question is manifestly unreasonable.

The rule has no bearing on the fitness of sub-local members to hold union office. The District Court found that "the Union's rule admittedly is not directly related to a candidate's ability to serve as an officer * * *." Local 18 does not challenge any findings of fact of the District Court and does not seriously claim before this court that members of the Parent Local are more qualified (i. e. fitted) to hold union office than members of the sub-locals.

The preclusion of sixty per cent of the members of Local 18 from seeking union office without regard to their fitness to hold office is inconsistent with the intent of Congress in 29 U.S.C. § 481(e):

"[T]o protect the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership."

See, Wirtz v. Hotel Employees Union Local 6, 391 U.S. at 497–498, 88 S.Ct. at 1747.

---

3. The additional requirement that sub-local members "be qualified to operate one or more types of equipment within [Local 18's] jurisdiction and be able to earn a livelihood thereby" as a prerequisite to membership in the Parent Local (and therefore to holding union office) was held by the District Court to be an unreasonable qualification within the meaning of 29 U.S.C. § 481(e). This ruling is not challenged on this appeal.

**488**

Local 18 contends that the eligibility requirement is reasonable because all members of the union may transfer their membership to the Parent Local by paying the higher initiation fee and thereby become eligible for union office. Local 18 further contends that the initiation fee schedule set forth above is an important financing and recruiting device and that the fee for Parent Local membership is reasonably priced.

The emphasis of the Union's argument is misplaced. The determinative question is not whether the Parent Local's package of benefits is reasonably priced, but whether the right to run for union office may be packaged and sold. Any sub-local member desiring to run for union office must purchase the entire package of benefits. We hold that it is unreasonable to require that all candidates for union office purchase union sponsored life insurance and the right to a paid-up union membership as a prerequisite to eligibility to hold office.

Further, we hold that it is unreasonable to require that an individual who has met all financial and other prerequisites to becoming a union member in good standing to pay an additional $75 to $90 for the right to run for union office.

The model for democratic union elections used by Congress in drafting the Act was political elections in this country. Wirtz v. Hotel Employees Union Local 6, *id*. at 504, 88 S.Ct. 1743. A requirement that all candidates for union office be members of a particular subdivision of the union has no parallel in our system of political elections. To sell the right to run for union office as a union recruiting and financing technique is patently undemocratic. We hold that the requirement in question is inconsistent "with the Act's command to unions to conduct 'free and democratic' union elections." Wirtz v. Hotel Employees Union Local 6, *id*. at 499, 88 S.Ct. at 1748.

The judgment of the District Court is affirmed.