Peter J. BRENNAN, Secretary of Labor, Plaintiff-Appellant,

v.

LOCAL 5724, UNITED STEELWORKERS OF AMERICA, AFL-CIO, and United Steelworkers of America, AFL-CIO, Defendants-Appellees.

No. 73-1171.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 2, 1973.

Decided Dec. 19, 1973.

Harlington Wood, Jr., Asst. Atty. Gen., William W. Milligan, U. S. Atty., Robert E. Kopp, Anthony J. Steinmeyer, Attys., Dept. of Justice, Washington, D. C., on brief, for plaintiff-appellant.

George H. Cohen, Michael H. Gottesman, Bredhoff, Cushman, Gottesman & Cohen, Washington, D. C., on brief, for defendants-appellees; Bernard Kleiman, Chicago, Ill., Stewart R. Jaffy, Clayman, Jaffy & Taylor, Columbus, Ohio, of counsel.

Before PHILLIPS, Chief Judge, and PECK and LIVELY, Circuit Judges.

PHILLIPS, Chief Judge.

A United Steelworkers' rule provides that no member shall be eligible for elec-

tion to a local union office unless he has attended at least one-half of the regular meetings of his local union during the previous 36 months. The issue presented on this appeal is whether this attendance requirement is a reasonable qualification uniformly imposed within the meaning of the Labor-Management Reporting & Disclosure Act of 1959, 29 U. S.C. § 481(e).[1]

District Judge Joseph P. Kinneary held the rule to be valid. We affirm.

The Secretary of Labor filed this action challenging as null and void a Union election held in June 1967 by Local Union 5724, United Steelworkers of America, and seeking to have a new election conducted under his supervision. Jurisdiction is based upon 29 U.S.C. § 482.[2]

The Union attendance rule, imposed by Article VII, § 9, of the International Steelworkers' Constitution, in relevant part is as follows:

"No member shall be eligible for election as a Local Union Officer or Grievance Committeeman unless

* * * * * *

"(c) He has attended at least one-half (½) of the regular meetings of his Local Union for thirty-six (36) months previous to the June, 1967, election, unless his Union activities or working hours prevented his attendance."

The facts are largely undisputed. In June 1967, Local 5724 had approximately 1,700 members comprised exclusively of production and maintenance employees at the Ormet Corporation plant in Hannibal, Ohio. The plant operated in shifts. About 800 employees worked the day shift (8 a. m. to 4 p. m.), but only about 439 of these employees were permanently assigned to this shift. Approximately 430 employees worked the 4 p. m. to 12 p. m. shift, 88 of whom were permanently assigned. About 370 employees worked from midnight to 8 a. m., and of these, 33 were permanently assigned to this night shift. Those employees who were not permanently assigned to a particular shift were rotated from one shift to another.

1. 29 U.S.C. § 481(e) provides in part:
"In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. * * * The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter."

2. Section 402, 29 U.S.C. § 482, authorizes the Secretary of Labor to file suit to remedy any violation of § 401 if certain conditions have been met:
(a) A member of a labor organization—
(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title . . . .
(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization . . . to set aside the invalid election, if any, and to direct the conduct of an election . . . under the supervision of the Secretary . . . .
(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

* * * * * *

(2) that the violation of section 481 of this title may have affected the outcome of an election,
the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary . . . .

Local 5724 held regular meetings according to a set schedule at 4:30 p. m. on the second Thursday of each month at a union hall located in Clarington, Ohio. The union hall was eight miles from the plant and could be reached in a 15 minute automobile ride from the plant. The average length of each meeting was about two hours. For the 36 monthly meetings between June 1964 and May 1967, attendance varied from 11 to 117 members, with an average attendance of 45.

At the meeting on May 11, 1967, there were 42 nominations for nine local union offices. Nine of the nominations were declined. An election committee then determined whether the remaining 33 nominees were eligible for office. Under the International Constitution of the Steelworkers, there were three requirements for eligibility to run for and hold local union office; the member must (1) have been in continuous good standing for a period of 24 months immediately preceding the election, (2) have been employed in a plant or mill or other place within the jurisdiction of the local union, and (3) have attended at least 18 of the regular monthly meetings in the 36 months preceding the June 1967 election, unless his union activities or working hours excused his attendance. Since these requirements were a part of the Steelworkers' International Constitution, they were binding on all 3,700 local unions chartered by the International Union in 1967.

. Although none of the 33 nominees was disqualified on account of the first two requirements, nine nominees were declared ineligible to seek office because of their failure to satisfy the meeting attendance rule. Of the 24 qualifying candidates, 19 had attended 18 or more of the previous 36 meetings and five more qualified as candidates by combining attendance with excused absences. As a result of the disqualifications pursuant to the meeting attendance rule, the nominees for recording secretary, treasurer and guide ran unopposed.

After the election, James Hutson, a nominee for President who had been declared ineligible under the meeting attendance rule, filed a timely written protest with the Local in which he contested the reasonableness of the rule. Hutson had attended 11 of the 36 meetings preceding the election and had no excused absences because he was permanently assigned to the day shift. When Local 5724 denied his protest, Hutson appealed to the International Union's Executive Board, but that body also denied his protest. Having thus exhausted his internal union remedies, as required by § 402(a) of the Act, 29 U.S.C. § 482(a), Hutson filed a timely complaint with the Secretary.

After the investigation required by § 402(b) of the Act, 29 U.S.C. § 482(b), the Secretary then commenced this action against Local 5724. The International Union intervened as a defendant.

The District Judge conducted an evidentiary hearing as to the purposes of the Steelworkers' meeting attendance rule and concluded that it was intended to accomplish legitimate union goals. Accordingly, the District Judge held that the rule was not an "unreasonable qualification" for candidacy for local union office and that the rule was "uniformly and fairly applied" to each member of Local 5724 in the disputed election. For the reasons set out below, we agree with the decision of the District Court.

We are cited to no decision of the Supreme Court or any Court of Appeals deciding the question of whether the Steelworkers' attendance rule is a "reasonable qualification uniformly imposed" within the meaning of the statute. Three District Courts have sustained the rule. See, Shultz v. Local Union 6799, United Steelworkers of America, 71 L RRM 2830 (C.D.Cal.1969), aff'd on other grounds, 426 F.2d 969 (9th Cir. 1970), aff'd sub nom., Hodgson v. Local 6799, United Steelworkers of America, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971); Shultz v. Local 1299, Unit-

ed Steelworkers of America, 324 F.Supp. 750 (E.D.Mich.1970), aff'd in part, sub nom., Hodgson v. Local 1299, United Steelworkers of America, 453 F.2d 565 (6th Cir. 1971); Shultz v. Local 1150, United Steelworkers of America, 75 LRRM 2869 (S.D.Ind.1970), vacated on other grounds (No. 71–1467, 7th Cir., July 1971, unreported). On the other hand, one District Court in dicta has expressed the view that the Steelworkers' rule did not constitute a reasonable qualification for eligibility for office holding. Brennan v. Local 3911, United Steelworkers of America, Nos. 71–C–74 (N.D. Ill., March 16, 1973).

The reason why no Court of Appeals has yet reviewed the validity of the Steelworkers' rule is because in each of the above cases the union member or members who protested the conduct of an election failed to raise the question of the legality of the rule during the course of the internal union procedure and thus did not satisfy the exhaustion requirement set forth in § 402(a) of the Act, 29 U.S.C. § 482(a).[3]

The Supreme Court determined in Hodgson v. Local Union 6799, United Steelworkers of America, *supra,* 403 U. S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971), that the failure to exhaust internal union remedies precluded the Secretary from filing suit to challenge the validity of the rule. Accordingly, the Supreme Court in *Local 6799* expressly left unanswered the issue of whether the Steelworkers' rule was reasonable. 403 U.S. at 341, 91 S.Ct. 1841. Subsequently, this court found it "unnecessary . . . to reach" the merits of the Steelworkers' rule in Hodgson v. Local 1299, United Steelworkers of America, 453 F.2d 565, 575 (6th Cir. 1971).

In the present case the parties stipulated and the District Court found that union member Hutson, a nominee for President of Local 5724, after being declared ineligible for failing to satisfy the meeting attendance rule, thereafter attacked the validity of the rule throughout the course of his timely internal protest first to the Local and then to the International Union. Thus the validity of the Steelworkers' rule is properly before the court in this action.

In determining the reasonableness of the meeting attendance rule, we are guided by the purpose of the Labor-Management Reporting and Disclosure Act of 1959. The Supreme Court has stated the spirit of the Act as follows: "Title IV's special function in furthering the overall goals of the LMRDA is to insure 'free and democratic' elections." Wirtz v. Local 153, Glass Bottle Blowers Assn., 389 U.S. 463, 470, 88 S. Ct. 643, 648, 19 L.Ed.2d 705 (1968). Section 401(e) of the Act serves this function by prohibiting candidacy requirements which are not "reasonable qualifications uniformly imposed."

In interpreting the "reasonable qualifications uniformly imposed" provision, the Supreme Court has announced the rule that § 401(e) is to be strictly construed. In Wirtz v. Hotel, Motel and Club Employees Union, Local 6, 391 U.S. 492, 499, 88 S.Ct. 1743, 1748, 20 L.Ed.2d 763 (1968), the Court stated:

"Congress plainly did not intend that the authorization in § 401(e) of 'reasonable qualifications uniformly imposed' should be given a broad reach. The contrary is implicit in the legislative history of the section and in its wording that 'every member in good standing shall be eligible to be a candidate and to hold office . . . .' This conclusion is buttressed by other provisions of the Act which stress freedom of members to nominate candidates for office. Unduly restrictive candidacy qualifications can result in the abuses of entrenched leadership that the LMRDA was expressly enacted to curb. The check of democratic elections as a preventive measure is seriously impaired by candidacy qualifications which sub-

---

3. For a text of the exhaustion requirement contained in § 402(a) of the Act, 29 U.S.C. § 482 (a), see n. 2.

stantially deplete the ranks of those who might run in opposition to incumbents. [footnote omitted.]"

The Secretary first contends that the meeting attendance rule is per se unreasonable because it bars more than 80 per cent of the members of Local 5724 from running for or holding office. The Secretary relies on *Hotel Employees, supra,* and Hodgson v. Local Unions 18, International Union of Operating Engineers, 440 F.2d 485 (6th Cir.), cert. denied, 404 U.S. 852, 92 S.Ct. 90, 30 L.Ed.2d 91 (1971).

The restriction at issue in *Hotel Employees* limited eligibility for major elective offices to members who had previously held office. In striking down this requirement, the Supreme Court looked to its practical impact:

"Plainly, given the objective of Title IV, a candidacy limitation which renders 93% of union members ineligible for office can hardly be a 'reasonable qualification.' " [391 U.S. at 502, 88 S.Ct. at 1749.]

While 93 per cent was held plainly unreasonable, the Supreme Court did not indicate the maximum permissible percentage of members that could be barred by a reasonable rule.

To answer this question, the Secretary turned to this court's opinion in *Local Unions 18, supra.* The rule at issue in that case required that candidates belong to a parent local rather than a branch local. After finding that this rule precluded over 60 per cent of the union members from holding office, this court concluded that the rule was "manifestly unreasonable," particularly because there was no relationship between the rule and a member's fitness for office. 440 F.2d at 487.

On the basis of *Hotel Employees* and *Local Unions 18,* the Secretary contends that the Steelworkers' rule is unreasonable because only 1.4 per cent of Local 5724's members had attended the necessary 18 of 36 meetings, and when excused absences were included, only 6.9 per cent were eligible to be candidates.

This would leave 93.1 per cent of Local 5724's membership disqualified by the meeting attendance rule, but the Secretary acknowledges that this figure may be reduced to as low as 84.8 per cent once certain other credits for work conflicts are considered.

On the other hand, the Steelworkers argue that (1) the effect of the rule is not the touchstone for determining its reasonableness, (2) the Secretary's per se theory rests on an incorrect interpretation of *Hotel Employees* and *Local Unions 18* and (3) the Secretary's argument here is contrary to his published position as set forth in his Interpretative Manual. We agree with the Steelworkers' position.

To satisfy the minimum requirements of the Steelworkers' rule, all that any member had to do was to devote approximately two hours to union affairs every other month during the three year period between elections. The obligation thus imposed on a member was to spend thirty-six hours at union meetings every three years. Further, it should be emphasized that the meetings followed a set pattern. They were conducted on the second Thursday of each month and were scheduled at the most desirable time for purposes of accommodating a majority of the members (30 minutes after the day shift ended). In addition, the meeting hall was conveniently located within a fifteen minute automobile drive from the plant.

Assuming the accuracy of the Secretary's mathematical computations that 84 to 93 per cent of Local 5724's members were disqualified from seeking office in the 1967 election, this is largely the fault of the union members themselves. Since the union meetings were held according to a set pattern and at a convenient location, the real cause of the large scale disqualifications is not the per se existence of the Steelworkers' rule but the failure of union members to attend the meetings.

Not only does the Secretary mistakenly fail to look to the real cause of the

disqualifications here, but he also misinterprets the Supreme Court's decision in *Hotel Employees* and our decision in *Local Unions 18*. The Supreme Court in *Hotel Employees* noted that only seven per cent of the members satisfied the "prior office holding" requirement; that many of these had been appointed by the incumbents to fill vacancies, thus "enabl[ing] the incumbent group to qualify members for elective office by a practice not available to dissidents;" and that in practice, endorsement by the incumbent group was necessary to get elected to lower office, thus making it impossible for dissidents ever to qualify to run for higher office. 391 U.S. at 505, 88 S.Ct. 1743. The Court finally declared that "control by incumbents through devices which operate in the manner of this bylaw is precisely what Congress legislated against in the LMRDA." 391 U.S. at 505, 88 S.Ct. at 1751.

This legislative objective is not thwarted by the Steelworkers' meeting attendance rule. Unlike the *Hotel Employees'* bylaw, the Steelworkers' rule disqualifies no one. Every member can qualify by the relatively unburdensome step of devoting a few hours per month to the affairs of his Union. Steelworkers disqualify themselves as a matter of free choice by their unwillingness to devote a few hours per month to Union affairs. Because of this, as the District Court expressly held in *Local 6799, supra*, 71 LRRM at 2823, every member could have qualified merely by attending one-half of the meetings.[4]

The self-evident restrictive character of the "prior office holding" rule, when accompanied by the numerical effect of drastically limiting the number of eligible candidates for office, justifies the result in *Hotel Employees*. It is, however, erroneous to conclude, as the Secretary contends, that *Hotel Employees* commands blind adherence to a per se

theory even where, as here, the rule does not by itself disqualify anyone and, as will be shown below, does serve legitimate union objectives.

The Secretary's reliance on this court's decision in *Local Unions 18* is also misplaced. The candidacy rule in that case was drastically different from the Steelworkers' meeting attendance rule. Local 18 was divided into a parent and three sub-locals. Members of all four subdivisions were members in good standing of Local 18. The problem was that only members of the parent local were eligible to run for office and, in turn, this meant that members of the sub-locals who desired to run for local union office had to pay an additional $75 to $90 to satisfy the parent local initiation fee. 440 F.2d at 486–487.

In a bare statistical sense, this resulted in over 60 per cent of Local's 18's entire membership being precluded from seeking office. This court invalidated the election in *Local Unions 18*, on the following two-fold reasoning: the union had applied a rule which (1) placed a price tag on a member's right to run for office and (2) had no bearing on the member's fitness to hold office. 440 F. 2d at 487–488. These deficiencies were deemed to be antithetical to the policies of LMRDA. The fact that the Union rule also had the effect of precluding a certain percentage of members, there 60 per cent, from running for office was plainly not the basis of the reasoning of this court.

We believe that the Steelworkers' rule has a direct, substantial relationship to fitness to hold office in that participation in union meetings is one indicia of interest in union affairs. Further, it does not place any price tag on the right to be a candidate. As such, the rationale of *Local Unions 18* does not support the Secretary's position here.

Further, the position of the Secretary is not consistent with relevant provi-

---

4. In addition, as will be more fully noted *infra*, the Steelworkers' rule fosters the objectives of the Act, inter alia, in that by requiring dissidents to attend local union meet- ings it assures that incumbents cannot administer the union's affairs in an uncontrolled, arbitrary manner.

sions of his own published LMRDA Interpretative Manual.[5] The Manual generally supports qualifications designed to assure that candidates have participated in Union affairs and specifically sanctions 50 per cent attendance requirements over one and two year periods. It is difficult for us to see any significant difference for a meeting attendance requirement covering a period of three years. These regulations, although later amended by the Secretary, were in effect when the dispute here arose.

The Secretary's second main contention is that the Steelworkers' rule is unreasonable because of alleged disproportionate effects on (1) potential insurgents, (2) new members and (3) night shift workers. Although the Secretary stipulates that the Steelworkers' rule is uniformly imposed in the sense that it applies to all locals and all members, he argues that its practical impact is not uniform for all categories of members and that this lack of uniform imposition demonstrates its unreasonableness. He argues that potential insurgents do not know three years in advance that they may challenge union incumbents, that the rule hampers new members from running for office, and that the meeting time (4:30 p. m.) effectively prevents night shift workers from attending be-

cause it occurs midway between the end of one shift (8 a. m.) and the beginning of another (midnight).

We are unpersuaded by the Secretary's arguments in this regard whether they go to the reasonableness of the rule or to its uniform imposition. In our opinion, valid reasons exist, wholly apart from the meeting attendance rule in question, for requiring potential insurgents and new members to attend a minimum number of meetings before running for office, inter alia, to provide some assurance that nominees for office will have demonstrated their willingness to comply with fundamental obligations to their Union for a reasonable period of time. Further, the Secretary has made no showing that the 4:30 p. m. meeting time imposed an undue hardship on the 33 employees permanently assigned to the midnight to 8 a. m. shift or the 340 employees working that shift on a rotating schedule. Union meetings were held only once a month and night shift workers could have attended the 4:30 p. m. meetings if they had desired to do so.

Finally, the Secretary contends that the purported justifications for the rule are imperceptibly small or can be served by less restrictive alternatives. We find this argument equally unpersuasive.

The District Judge conducted an evidentiary hearing limited to the purposes

---

5. The following are excerpts from the LMRDA Interpretative Manual:
"422.250 PARTICIPATION IN UNION AFFAIRS
Qualifications reasonably designed to assure that candidates have participated in the affairs of the union and are sufficiently familiar with the industry in which the union operates, would not be considered unreasonable in ordinary circumstances, if uniformly imposed. In the absence of knowledge of any special circumstances which cast doubt upon the validity and reasonableness of any of the qualifications they are not to be considered unreasonable in themselves.
"422.205 ATTENDANCE AT 6 OF 12 UNION MEETINGS MAY BE REASONABLE
A provision requiring that to be eligible as a candidate for office a member must attend six out of twelve meetings during

the year, if applied fairly and uniformly to all members, would not in ordinary circumstances, be an unreasonable qualification of the right to be a candidate for union office, within the meaning of section 401(e) of the Act.
"422.206 12 of 24 MEETINGS MAY BE REASONABLE
A provision requiring a member to have attended at least one-half of the regular meetings of his local union for 24 months previous to the election before he may be eligible to hold office, is not unreasonable if it is applied fairly and uniformly to all members.
It might well be unreasonable, however, in circumstances in which attendance presented an unusual degree of difficulty for a significant proportion of the membership; as for example, where the local had an extensive geographical jurisdiction."

of the Steelworkers' rule. His conclusion of fact was that the rule was adopted for the following three reasons.[6]

"(1) To encourage broad base participation in the affairs of the union, and to obtain as large a turnout as possible at the meetings at which the union's business is conducted.

"(2) To attempt to assure that candidates have demonstrated an interest in and are likely to be concerned with the problems of the union.

"(3) To attempt to insure that candidates have participated in the affairs of the union and are, therefore, sufficiently familiar with its problems to be able more intelligently to fulfill the numerous responsibilities and duties attendant to holding office."

On the basis of this evidentiary hearing, the District Judge concluded that the purpose of the Steelworkers' rule was as follows:

"[T]o accomplish legitimate union goals; namely, to provide a constant check upon the growth of unbridled control of the local's affairs by incumbent officers, as well as to provide a means of familiarizing rank and file members of that which is entailed in the management of the local's affairs. Shultz v. Local 1299, United Steelworkers of Amer., *supra* [324 F. Supp.] at p. 756; *see also* Shultz v. Local 1150, Steelworkers, *supra* at p. 2877."·

The Secretary's argument gives us no basis on which to conclude that the findings of fact of the District Judge are clearly erroneous, Fed.R.Civ.P. 52(a), or that the District Judge erred in concluding that the Steelworkers' rule was designed to "accomplish legitimate union goals."

We, therefore, hold that the Steelworkers' meeting attendance requirement for candidacy for local union of-

fice is a "reasonable qualification uniformly imposed" under the facts and circumstances of this case.

Affirmed.

---

6. The Steelworkers suggest a fourth reason for the rule, to wit, to insure that those who are in the opposition will come to Union meetings in order to keep ripe their right to run against the local Union leadership.