# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1299

_____

Brenda J. Reed,                *
                                   *
    Plaintiff - Appellant,     *
                                   *
    v.                         *   Appeal from the United States
                                   *   District Court for the
John N. Sturdivant; American    *   Eastern District of Missouri.
Federation of Government Employees,  *
                                   *
    Defendants - Appellees.    *
                                   *

_____

Submitted:  December 14, 1998

Filed:  May 7, 1999

_____

Before BEAM and LOKEN, Circuit Judges, and BOGUE,[*] District Judge.

_____

LOKEN, Circuit Judge.

In October 1995, the American Federation of Government Employees (AFGE), a national labor organization, placed its Local 900 in trusteeship on grounds of financial mismanagement and conflict among the local's officers. Local 900 represents federal employees at the Army Reserve Personnel Center in St. Louis.

_____

[*]The HONORABLE ANDREW W. BOGUE, United States District Judge for the District of South Dakota, sitting by designation.

Brenda Reed, a member of Local 900 and a supporter of its ousted president, complained to the Department of Labor that AFGE imposed the trusteeship to suppress dissent against its national leadership. After the Department investigated and declined to challenge the trusteeship, Reed commenced this action against AFGE and its president, John Sturdivant, alleging a violation of the trusteeship provisions of Title III of the Labor-Management Reporting and Disclosure Act of 1959 (the "LMRDA"), 29 U.S.C. §§ 461-466. The district court[1] dismissed the complaint, concluding Title III does not apply to trusteeships imposed upon local unions that represent only federal government employees. Reed appeals. Reviewing the district court's dismissal de novo, we affirm. See Furrer v. Brown, 62 F.3d 1092, 1093 (8th Cir. 1995) (standard of review), cert. denied, 517 U.S. 1167 (1996).

Congress enacted the LMRDA to address corruption in labor organizations. Title III addresses the abusive use of trusteeships by national unions to control the selection of local delegates to national conventions, to install corrupt local leaders, or to plunder a local union's assets. See S. Rep. No. 86-187 (1959), reprinted in 1 LEGISLATIVE HISTORY OF THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959, at 413-15 (N.L.R.B. 1959) (hereafter cited as "LEGISLATIVE HISTORY"). In general, Title III establishes reporting requirements, limits the permissible reasons for imposing a trusteeship, regulates voting by delegates from trusteed bodies, and prohibits unusual transfers of funds from the trusteed body to the parent labor organization. See 29 U.S.C. §§ 461-463. Title III also contains a broad private right of action -- "Any member or subordinate body" may sue to enforce these provisions and recover "such relief (including injunctions) as may be appropriate." 29 U.S.C. § 464(a).

---

[1]The HONORABLE JEAN C. HAMILTON, Chief Judge of the United States District Court for the Eastern District of Missouri.

The issue in this case is whether Title III applies to a trusteeship imposed by AFGE on Local 900, which represents only federal government employees. In general, the LMRDA applies to "labor organizations" who deal with "employers." See 29 U.S.C. § 402(i). The United States is *excluded* from the LMRDA definition of "employer." See 29 U.S.C. § 402(e). Therefore, Local 900 is not a "labor organization" under the LMRDA. But other AFGE locals represent employees who work in the private sector. That makes AFGE a "mixed" union, one that is a "labor organization" for purposes of the LMRDA. See 29 C.F.R. § 451.3(a)(4).[2]

The issue of whether Title III applies to this case is difficult because the various sections of Title III use different terminology in referring to the organization that has been placed under trusteeship. The first section, 29 U.S.C. § 461, establishes reporting requirements for labor organizations that place a "subordinate labor organization" under trusteeship.[3] Because Local 900 is not a "labor organization," subordinate or otherwise, these reporting requirements of Title III clearly do not apply to its trusteeship. But the next three sections of Title III contain the substantive restrictions Reed alleges have been violated and authorize the private action she has filed. These sections refer to trusteeships imposed by a "labor organization" over a

_____

[2]Other circuits have held that government workers who belong to a mixed national union are protected by Title I of LMRDA, 29 U.S.C. §§ 411-415, the statute's "bill of rights" provisions. See, e.g., Wildberger v. American Fed'n of Gov't Employees, 86 F.3d 1188, 1192-93 (D.C. Cir. 1996). We have not had occasion to consider that issue, and it is not controlling here because Title III's trusteeship provisions were intended to protect the trusteed local organization, not its individual members. See, e.g., Gesnik v. Grand Lodge, Int'l Ass'n of Machinists, 831 F.2d 214, 216 (10th Cir. 1987); S. Rep. No. 86-187, reprinted in 1 LEGISLATIVE HISTORY, supra, at 413-15 (listing only harms to the trusteed organization).

[3]This section as originally written referred to trusteeships over "subordinate organizations." The word "labor" was added as a technical amendment by the Senate committee, whose report described this addition as merely a clarifying amendment, not a substantive change. See 1 LEGISLATIVE HISTORY, supra, at 397-98.

"subordinate body," a term that is neither defined in the statute nor explained in its legislative history. See 29 U.S.C. §§ 462-464.[4] Reed argues that, as a matter of plain meaning, the broader reference in these sections to a "subordinate body" includes Local 900, even though it is not a "labor organization." AFGE responds that the district court properly dismissed this action because Title III, read as a whole and in the context of its legislative history, applies only to trusteeships over "subordinate bodies" that are "labor organizations."

As the district court recognized, in resolving this thorny question of statutory construction, we do not write on a clean slate. Four other circuits have considered the question and concluded that the term "subordinate body" when used in Title III means subordinate "labor organization." See New Jersey County & Mun. Council # 61 v. American Fed'n of State, County & Mun. Employees, 478 F.2d 1156 (3d Cir.), cert. denied, 414 U.S. 975 (1973); Colorado Labor Council v. AFL-CIO, 481 F.2d 396 (10th Cir. 1973); Kanawha Valley Labor Council v. AFL-CIO, 667 F.2d 436 (4th Cir. 1981); Smith v. Office & Prof'l Employees Int'l Union, 821 F.2d 355 (6th Cir. 1987). Two of those cases, AFSCME and Smith, considered the question before us and expressly held that Title III did not apply to a trusteeship imposed by a mixed national

---

[4]The heading for 29 U.S.C. § 463 is "labor organizations under trusteeship," but the text of the section uses the term "subordinate body." Headings are usually given little weight in construing a statute but may be used to clarify an ambiguity. See Minnesota Transp. Regulation Bd. v. United States, 966 F.2d 335, 339 (8th Cir. 1992).

One possible explanation for Congress's use of the term "subordinate body," rather than "subordinate labor organization," in these parts of Title III was an intent to regulate trusteeships imposed by national unions on intermediate bodies that do not function as local unions, such as general committees, system boards, joint boards, and joint councils. But if that was the drafters' intent, their use of a term broader than labor organization became unnecessary when intermediate bodies were added to the definition of labor organization on the Senate floor. See 29 U.S.C. §§ 402(i), 481(d); 2 LEGISLATIVE HISTORY, at 1121.

union on a local that represented only government employees. Moreover, the Secretary of Labor, who has administrative and enforcement responsibilities under Title III, has filed an amicus brief urging us to affirm and noting that the Department of Labor has consistently construed Title III's trusteeship provisions as not applying to subordinate bodies that do not meet the LMRDA definition of labor organizations.

In our view, the response of Congress to this long-recognized issue is of great significance. In 1978, some years after the decisions in <u>AFSCME</u> and <u>Colorado Labor Council</u>, Congress subjected federal employee unions to comprehensive regulation in the Civil Service Reform Act (the "CSRA"), codified at 5 U.S.C. §§ 7101-7135. The CSRA expressly provides that labor organizations seeking to represent federal employees "shall . . . comply with trusteeship and election standards," and that same section directs the Secretary of Labor to prescribe implementing regulations which "conform generally to the principles applied to labor organizations in the private sector." 5 U.S.C. §§ 7120(c) and (d).

While both Title III of the LMRDA and the CSRA regulate trusteeships, their respective remedial regimes are very different. Under Title III, union members may complain of trusteeship violations to the Secretary, who "shall" bring an action in district court for appropriate relief if there is probable cause to believe a violation has occurred. In addition, the complaining member may bring a private action. <u>See</u> 29 U.S.C. § 464(a). Under the CSRA, on the other hand, the Secretary in response to a complaint "*may* require a labor organization to cease and desist from violations" of the trusteeship regulations, 5 U.S.C. § 7120(d) (emphasis added), and there is no private right of action permitting the complainant to challenge the alleged violation directly in federal court. <u>See</u> <u>Karahalios v. National Fed'n of Fed. Employees</u>, 489 U.S. 527 (1989); <u>Celli v. Shoell</u>, 40 F.3d 324, 327-28 (10th Cir. 1994); <u>Martinez v. American Fed'n of Govt. Employees</u>, 980 F.2d 1039, 1041 n.1 (5th Cir. 1993). These contrasting provisions reflect a legislative intent to subject trusteeships imposed on

federal employee unions to the administrative remedies of the CSRA, rather than the judicial remedies of Title III of the LMRDA.[5]

Given this long history, we conclude the district court properly construed the term "subordinate body" in Title III. While Reed's plain meaning argument might have considerable force if presented to us as a question of first impression, there are now twenty-five years of consistent judicial, administrative, and legislative history to the contrary. After two circuits construed Title III as not applying to trusteeships imposed upon local unions of federal employees, Congress responded by enacting the CSRA, which mandates the same substantive standards but is enforced by exclusively administrative remedies. In these circumstances, we decline to read into the LMRDA a fundamentally different judicial remedy.

Finally, Reed argues that her complaint should have been dismissed without prejudice. The district court dismissed her complaint for lack of subject matter jurisdiction because Title III does not apply to a trusteeship imposed upon Local 900. Reed argues this jurisdictional dismissal is not on the merits and should be without prejudice. We disagree. The district court had jurisdiction to consider Reed's claim under 29 U.S.C. § 464(a). Her complaint failed to state a claim on which relief could be granted under that statute. That is a disposition on the merits. See Bell v. Hood, 327 U.S. 678, 682 (1946); Health Cost Controls v. Skinner, 44 F.3d 535, 537 (7th Cir. 1995). A dismissal for this reason is with prejudice. See Ahmed v. United States, 147 F.3d 791, 797 (8th Cir. 1998). Whether Reed now retains any timely, unpreempted, unprecluded state law cause of action is an issue not before us, and we decline to consider it.

---

[5]In this case, consistent with the Secretary's position as amicus, the letter ruling rejecting Reed's administrative complaint stated that the Department of Labor had investigated under the CSRA, not the LMRDA. See 29 C.F.R. Part 458.

The judgment of the district court is affirmed.

A true copy.

Attest:

       CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.