**Elaine CHAO, Secretary of Labor, United States Department of Labor, Plaintiff–Appellant,**

v.

**BREMERTON METAL TRADES COUNCIL, AFL–CIO, Defendant–Appellee.**

No. 00–35729.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 2002.

Filed June 25, 2002.

Stephanie R. Marcus, Anne Murphy, David W. Ogden, Katrina C. Pflaumer, and Michael Jay Singer, United States Department of Justice, Washington, DC, for the plaintiff-appellant.

Richard H. Robblee, Rinehart, Robblee & Hannah, Seattle, WA, for the defendant-appellee.

Before: THOMAS, GRABER, and GOULD, Circuit Judges.

GOULD, Circuit Judge:

In this case we must consider whether a joint council, the Bremerton Metal Trades Council ("Bremerton Council"), is a labor organization within the meaning of the Labor–Management Reporting and Disclosure Act ("LMRDA"), whether the LMRDA's requirements for fair election procedures are superseded by the Civil Service Reform Act ("CSRA"), and whether a challenged eligibility requirement for elected officers is reasonable under the LMRDA.

**I**

The Secretary of Labor ("Secretary") brought this action alleging violation of the LMRDA, 29 U.S.C. § 481(e), on behalf of Richard Taylor, a federal employee. Taylor is a member of American Federation of Government Employees, Local No. 48 ("Local 48") and, in 1998, was a delegate to the biennial Bremerton Council election. After Taylor was nominated for the position of Bremerton Council vice-president, the Bremerton Council president ruled that Taylor was ineligible to run for vice-president because his national union, American Federation of Government Employees ("AFGE"), was not affiliated with the Metal Trades Department of the AFL–CIO. The Bremerton Council by-laws require Bremerton Council affiliates to comply with the Metal Trades Department constitution. The Metal Trades Department constitution precludes any Bremerton Council delegate from holding office if the delegate's national union is not affiliated with, and does not pay dues to, the Metal Trades Department.

The Bremerton Council was chartered by and is subordinate to Metal Trades Department. As a joint council of labor organizations, the Bremerton Council is comprised of local unions. The local unions that belong to the Bremerton Council represent both public- and private-sector employees. Taylor's local union, Local 48, has 135 members. The Bremerton Council is the exclusive bargaining representative of some members of Local 48. Based on its membership size, Local 48 makes up eight percent of Bremerton Council. Local 48's national organization, the AFGE, could join Metal Trades Department, but it has not done so.

In the district court, the Secretary sought to set aside the Bremerton Council election under the LMRDA because of Taylor's allegedly unlawful exclusion. 29 U.S.C. § 482(c). Bremerton Council moved for summary judgment, arguing 1) that it was not subject to the LMRDA because it represents only public-sector employees; 2) that the CSRA, 5 U.S.C. §§ 7101–7135, preempts the LMRDA when the latter is invoked by a federal employee; and 3) that the candidacy re-

quirement of the national union's affiliation with Metal Trades Department is reasonable. The district court rejected the first two arguments but granted summary judgment based on the third argument. The Secretary appeals.

## II

The Bremerton Council contends that it is not a labor organization within the meaning of the LMRDA because it bargains only with the federal government. On this ground, the Bremerton Council argues that neither the district court nor this court has jurisdiction and that the district court should have granted summary judgment in its favor on the issue of the LMRDA's applicability to the Bremerton Council.

The Bremerton Council is a locality-based council of local labor unions. It was chartered by, and continues to be affiliated with, the Metal Trades Department. The purpose of the Bremerton Council is to "protect and promote the interests of its affiliated local unions." Bremerton Council By–Laws, Art. III. The Bremerton Council "engage[s] in ... negotiation and administration of Labor Agreements with those Employers with whom the Council is the recognized collective bargaining representative ...." *Id.* Although some local unions that belong to the Bremerton Council represent both public and private employees, the Bremerton Council itself does not bargain with any non-federal employers.

The LMRDA defines a "[l]abor organization":

"Labor organization" means a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and *any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body.*

29 U.S.C. § 402(i) (emphasis added).

■ To determine whether a labor union is engaged in an industry affecting commerce under the statute, the statute directs us to consider whether the union represents employees who work for employers that are engaged in such an industry. 29 U.S.C. § 402(j)(1)-(4). Because the LMRDA's definition of "employer" excludes the United States, 29 U.S.C. § 402(e), a union that exclusively represents federal government employees is not subject to the LMRDA. *See, e.g., Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir.1996) (per curiam).

■ To determine whether a joint council such as the Bremerton Council is engaged in an industry affecting commerce, the statute directs us to ask whether the joint council is "subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection, other than a State or local central body." 29 U.S.C. § 402(j)(5). We must decide not whether the Bremerton Council bargains directly with any private employers but, instead, whether the Metal Trades Department, the organization to which the Bremerton Council is subordinate, is engaged in an industry affecting commerce. *See, e.g., Roddy v. United Transp. Union,* 479 F.Supp. 57, 60–61 (N.D.Ala.1979).

The undisputed facts lead to the conclusion that the Metal Trades Department is engaged in such an industry: The Metal

Trades Department is a trade department of the American Federation of Labor–Congress of Industrial Organizations ("AFL–CIO"), a voluntary federation of national and international labor unions. According to John Meese, the President of the Metal Trades Department, the Metal Trades Department "is composed of national and international unions whose members are employed in metal and related industries." At the time of the proceedings in the district court, there were eighteen national and international unions affiliated with the Metal Trades Department. The metal trade councils chartered by the Metal Trades Department represent employees of public and private shipyards, industrial plants, and federal weapons manufacturers. The organization's purposes include "the encouragement and formation of local Metal Trade Councils, and the conferring of such power and authority on the several local organizations of this Department as may advance the interests and welfare of the metal trades industry." Metal Trades Department Const., Art. II, § 1. Additional goals include "establish[ing] more harmonious relations between employer and employee" and "secur[ing] improved wages, hours, working conditions and other economic advantages for our members through collective bargaining." *Id.*

The Metal Trades Department is not devoted exclusively to representing public sector employees; nor are the national and international unions that comprise it so devoted. Rather, the Metal Trades Department seeks to improve the conditions of employment for all employees in "metal and related industries"; that broad category of industry is not limited, implicitly or explicitly, to government work. Finally, the AFL–CIO, to which the Metal Trades Department is itself subordinate, is not limited to unions that represent federal employees. *See, e.g., Brown v. Sombrotto,* 523 F.Supp. 127, 130 (S.D.N.Y.1981) (describing the AFL–CIO, in a LMRDA case,

as being comprised of "approximately 101 affiliated national and international labor organizations").

The Metal Trades Department is a labor organization engaged in an industry affecting commerce and is itself subordinate to the AFL–CIO, another labor organization engaged in industries affecting commerce. And, because the Metal Trades Department is a labor organization, the Bremerton Council is also a labor organization by virtue of its subordination to Metal Trades Department. We conclude that the LMRDA applies to Bremerton Council because it is a labor organization.

### III

The Bremerton Council next argues that the applicability of the CSRA to this dispute precludes the Secretary from proceeding under the LMRDA, arguing that there is a preemption of claims that might be asserted within the framework of the CSRA. It is correct that the CSRA preempts state tort claims and that it precludes relief previously available under some federal statutes. *See, e.g., United States v. Fausto,* 484 U.S. 439, 453, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (holding that judicial review of agency decisions which had been previously available under a judicial interpretation of the Back Pay Act is no longer available after enactment of the CSRA for certain categories of workers); *Orsay v. United States Dep't of Justice,* 289 F.3d 1125 (9th Cir.2002) (holding that the CSRA precludes relief under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, and the Privacy Act, 5 U.S.C. § 552a); *Saul v. United States,* 928 F.2d 829, 841–43 (9th Cir.1991) (holding that state common law tort claims are preempted by the CSRA). However, no court has held that the CSRA precludes relief under Title IV of the LMRDA, 29 U.S.C. §§ 481–83, which governs labor organization election procedures, where both statutes are applicable.

When there is a potential conflict between two federal statutes, traditional preemption analysis is inapplicable; however, as with preemption analysis, the "ultimate resolution [of the conflict] depends on an analysis of congressional intent." *N.Y. Tel. Co. v. N.Y. State Dep't of Labor*, 440 U.S. 519, 540 n. 32, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979); *see also Smith v. Nat'l Steel & Shipbuilding Co.*, 125 F.3d 751, 755–57 (9th Cir.1997); *Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1447 (5th Cir.1992). "[R]epeals by implication are strongly disfavored," and a later statute "will not be held to have implicitly repealed an earlier one unless there is a clear repugnancy between the two." *Fausto*, 484 U.S. at 452–53, 108 S.Ct. 668. Because the LMRDA was passed in 1959, whereas the CSRA was passed in 1978, the question before us is whether the CSRA repealed the LMRDA by implication when the latter is invoked on behalf of a federal employee who is also covered by the CSRA.

Here, there is no explicit textual conflict between the two statutes. However, the LMRDA permits the Secretary to bring an action challenging candidacy requirements on behalf of an aggrieved union member, whereas the CSRA does not provide for a judicial remedy to challenge a union election or other allegedly unfair labor practices. *Compare* 29 U.S.C. §§ 481–82 of the LMRDA *with* 5 U.S.C. § 7120 of the CSRA; *see also Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 529, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989) (holding that no private right of action exists under the CSRA for breach of a federal employee's right to fair representation by a union); *Martinez v. Am. Fed'n of Government Employees*, 980 F.2d 1039, 1041 n. 1, 1042 (5th Cir.1993) (holding that the district court improperly dismissed an action by a union member alleging violation of his rights under the LMRDA to vote and otherwise participate in union affairs). There is no explicit textual conflict between the two statutes on challenges to labor organization elections, no "clear repugnancy" to support the Bremerton Council's argument that the CSRA implicitly repealed the LMRDA in this area.

This conclusion is reinforced when we consider the legislative intent underlying each of the two statutes. Congress' overriding purpose in enacting the CSRA was "to make the government more efficient and accountable" by allowing civil servants to be "hired and removed on the basis of merit." *Navy Public Works Ctr. v. Fed. Labor Relations Auth.*, 678 F.2d 97, 101 & n. 5 (9th Cir.1982) (citations and internal quotation marks omitted). To that end, the CSRA "comprehensively overhauled the civil service system, creating an elaborate new framework for evaluating adverse personnel actions against [federal employees]." *Fausto*, 484 U.S. at 443, 108 S.Ct. 668 (citations and internal quotation marks omitted; brackets in original). In contrast, instead of focusing generally on the employer-employee relationship, the LMRDA takes dead aim at the target of maintaining fair procedures within union processes. *See Aircraft Mechs. Fraternal Assoc. v. Transp. Workers Union of Am., Local 514*, 98 F.3d 597, 600 (10th Cir.1996); *see also Cowger v. Rohrbach*, 868 F.2d 1064, 1067 (9th Cir.1989). The purpose of Title IV of the LMRDA, which has no direct counterpart in the CSRA,[1] "is to

---

1. Although the Bremerton Council argues that 5 U.S.C. § 7120 is a direct counterpart of Title IV of the LMRDA, we disagree. Section 7120 primarily addresses when a federal agency may accord exclusive recognition to a labor organization. 5 U.S.C. § 7120. Nonetheless, the Bremerton Council is correct that, in that context, it does authorize the Secretary

provide free and democratic elections while giving effect to the countervailing policy ... that unions should be free to conduct their affairs so far as possible and the government should not become excessively involved in union politics." *Casumpang v. Int'l Longshoremen's & Warehouseman's Union, Local 142,* 269 F.3d 1042, 1052 n. 6 (9th Cir.2001) (citation and internal quotation marks omitted), *cert. denied,* —— U.S. ——, 122 S.Ct. 1961, —— L.Ed.2d —— (2002) (No. 01–1350); *see also Reich v. Local 89, Laborers' Int'l Union,* 36 F.3d 1470, 1476 (9th Cir.1994). Congress had differing aims in promulgating the two acts, and the small area where CSRA and LMRDA overlap does not restrict application of the LMRDA's standards for fair elections.

We have not addressed whether relief is available under Title IV of the LMRDA when the CSRA also applies. However, there is a persuasive discussion of a parallel issue in *Martinez.* There, the Fifth Circuit examined whether a federal employee could sue his national union and union officers under the LMRDA for violations of 29 U.S.C. § 411, the bill of rights portion of the LMRDA. 980 F.2d at 1041–42. The court acknowledged the applicability of the CSRA to the plaintiff's claims, *id.* at 1041 n. 1, but held that the case had to be remanded to the district court to determine whether the union, "through any of its locals, deals with any private sector employers on behalf of its members concerning the terms and conditions of employment." [2] *Id.* at 1042. The Fifth Circuit held that, if the defendant union

did deal with any private employers, then the plaintiff "must have an opportunity to litigate his claims in federal court." *Id.* We cited *Martinez* with approval in *Thompson,* which also involved a federal employee who sought to invoke the bill of rights portion of the LMRDA. *Thompson,* 99 F.3d at 353, 354.[3] *See also Celli v. Shoell,* 40 F.3d 324 (10th Cir.1994).

The Eighth Circuit's analysis in *Reed v. Sturdivant,* 176 F.3d 1051 (8th Cir.1999), is in accord, suggesting that relief under both the LMRDA and the CSRA is available when the entity at issue qualifies as a "labor organization" for the purposes of the LMRDA. In *Reed,* the Eighth Circuit held that Title III of the LMRDA, 29 U.S.C. § 464, did not apply to a national union's imposition of a trusteeship on a local union that did not qualify as a labor organization under the LMRDA because it represented only government employees. *Id.* at 1053–54. In holding that a member of an exclusively federal local could not sue for a trusteeship violation under the LMRDA, the court noted that Congress had adopted the CSRA *after* several courts had held that the LMRDA did not apply to such a local. *Id.* at 1054. Thus, the Eighth Circuit interpreted Congress' enactment of the CSRA as affording, under the CSRA, a new, but limited, avenue of relief to members of exclusively federal locals for trusteeship violations. *Id.*

 We hold that the same principle applies in the context of election challenges under Title IV of the LMRDA, as well as in the bill of rights proceedings previously

---

to regulate union affairs as specified therein. 5 U.S.C. § 7120(d). But this does not present a CSRA conflict with LMRDA.

**2.** As explained in Part II, because the Bremerton Council is a joint council rather than a labor union, whether it deals directly with any employers is not dispositive as to the applicability of the LMRDA.

**3.** However, we affirmed the dismissal of the plaintiff's claims in *Thompson* because the plaintiff had failed to allege that his union then represented any private-sector employees. 99 F.3d at 354.

addressed in *Thompson*. The Secretary may challenge a labor organization's election under the LMRDA on behalf of a federal employee, provided that the organization qualifies as a "labor organization" under the Act. Because in Part II we determined that Bremerton Council was a labor organization, the Secretary was entitled to impose the LMRDA's requirements on Bremerton Council's election of its officers.

## IV

We turn to the key issue under the LMRDA, whether the eligibility restriction was reasonable. Title IV of the LMRDA provides that "[i]n any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (*subject to ... reasonable qualifications uniformly imposed*)." 29 U.S.C. § 481(e) (emphasis added). The district court granted the Bremerton Council's motion for summary judgment because it concluded that the requirement that the national branch of a potential candidate's local be affiliated with the Metal Trades Department was a "reasonable qualification[ ] uniformly imposed." [4]

As previously explained, Bremerton Council's by-laws require members to adhere to the Metal Trades Department's constitution, which prohibits local councils from allowing a candidate to run for office if the national branch of his or her union is not affiliated with the Metal Trades Department. In holding that requirement to be reasonable, the district court stressed its views that the Metal Trades Department provides valuable services to the Bremerton Council and that the qualification was a reasonable means of facilitating payment for the Metal Trades Department's services. Also, the district court stressed that AFGE could affiliate with the Metal Trades Department at any time, thereby making Local 48's Bremerton Council delegates eligible to run for office.

We begin our analysis with this clear guidance from the United States Supreme Court:

> Congress plainly did not intend that the authorization in § [481(e) ] of "reasonable qualifications uniformly imposed" should be given a broad reach. The contrary is implicit in the legislative history of the section and in its wording that "every member in good standing shall be eligible to be a candidate and to hold office . . . ."

*Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 499, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968) (quoting 29 U.S.C. § 481(e)). The appropriate scope of reasonable qualifications must be considered in light of the democratic aim of the statute. And the Supreme Court has made clear that qualifications are to be gauged "in the light of all the circum-

---

**4.** The Bremerton Council argues that it does not hold elections by secret ballot, and § 481(e) is inapplicable. The Bremerton Council did not raise this argument below. The Bremerton Council concedes that the regulations apply the reasonableness requirement to joint council elections even when not held by secret ballot. *See* 29 C.F.R. § 452.33. The Bremerton Council, however, urges us to hold 29 C.F.R. section 452.33 invalid, another argument that was not presented to the district court and that we will not consider here.

"As a general rule, we will not consider arguments that are raised for the first time on appeal." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir.1999). This rule applies with force here because whether the Bremerton Council's elections are held by secret ballot is a factual question. *See USA Petroleum Co. v. Atlantic Richfield Co.*, 13 F.3d 1276, 1279 (9th Cir.1994) (plurality opinion); *see also N.W. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925–26 (9th Cir.1988).

stances of the particular case." *Local 3489, United Steelworkers v. Usery,* 429 U.S. 305, 313, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977).

The regulations promulgated by the Secretary are helpful in assessing eligibility restrictions, and provide the following factors to evaluate reasonableness:

(1) The relationship of the qualification to the legitimate needs and interests of the union;

(2) The relationship of the qualification to the demands of union office;

(3) The impact of the qualification, in the light of the Congressional purpose of fostering the broadest possible participation in union affairs;

(4) A comparison of the particular qualification with the requirements for holding office generally prescribed by other labor organizations; and

(5) The degree of difficulty in meeting a qualification by union members.

29 C.F.R. § 452.36(b).[5] We consider the factors of section 452.36(b) in turn.

■ The district court relied on the first factor, "the relationship of the qualification to the legitimate needs and interests of the union," which does support the reasonableness of the qualification. Certainly, every labor organization has a legitimate interest in collecting dues to fund its programs and services.

The second factor addresses "[t]he relationship of the qualification to the demands of union office," and it cuts the other way.

Because the challenged qualification requires an action by the national branch of a delegate's local union, there does not appear to be any relationship between the qualification and the duties and obligations of a delegate who has been elected to office. The qualification at issue is analogous to that addressed in *Hodgson v. Local Unions No. 18, etc., Int'l Union of Operating Eng'rs,* 440 F.2d 485 (6th Cir. 1971). In *Hodgson,* the Sixth Circuit addressed the reasonableness of a provision in the defendant union's constitution requiring members to transfer from a branch local to a parent local, at a cost of $75 to $90, as a prerequisite to running for office. *Id.* at 486. In holding that the rule was "manifestly unreasonable," the court noted that it had "no bearing on the fitness of sub-local members to hold union office." *Id.* at 487. Similarly, from all that appears on the limited record, whether Taylor's national union pays dues to the Metal Trades Department does not directly bear on Taylor's fitness for office of Bremerton Council.

Factor three, the impact of the qualification in excluding potential candidates, is inconclusive. Although the parties agree that the members of Local 48 comprise eight percent of the Bremerton Council, neither of the parties has addressed the possibility that other locals whose national branches are not affiliated with the Metal Trades Department may be members of the Bremerton Council. The Bremerton Council may be correct that exclusion of

---

5. The Bremerton Council argues that this regulation, by its terms, does not apply to it because its members are local unions rather than individuals. Although the regulation speaks in terms of unions, we consider it to be equally applicable to joint council elections governed by § 481(e). The regulation makes sense as applied to all labor organization elections subject to this provision of the LMRDA.

Although this regulation interpreting reasonableness is not binding on us, we are per-

suaded it is useful in applying § 481(e). *Cf. Brock v. Writers Guild of Am., West, Inc.,* 762 F.2d 1349, 1357 (9th Cir.1985) (addressing other regulations promulgated pursuant to Title IV of the LMRDA). Other federal courts have relied specifically on section 452.36(b) in interpreting § 481(e). *See, e.g., Dep't of Labor v. Aluminum, Brick & Glass Workers Int'l Union, Local 200,* 941 F.2d 1172, 1178 n. 9 (11th Cir.1991).

eight percent of the membership of the Bremerton Council from eligibility for office is "not of the magnitude usually associated with the substantial anti-democratic effect of unreasonable qualifications." *Dep't of Labor v. Aluminum, Brick & Glass Workers Int'l Union, Local 200,* 941 F.2d 1172, 1179 (11th Cir.1991). But we have no way to determine, on this record, whether eight percent is the relevant figure. Further, neither party has presented evidence showing the abundance or scarcity of qualified candidates for Bremerton Council office.

There is no information at all in the record on factor four, which would permit a comparison of the challenged eligibility provision with the qualifications and requirements for holding office prescribed by other similarly situated labor organizations. It would be interesting to know whether other trade councils have imposed similar eligibility requirements for office. If so, what reasons are advanced to require affiliation of a member's national union? If not, have there been any negative consequences? On such questions, the record is silent, and we do not know whether the challenged provision is unusual or in accord with common labor practices. This factor may have some weight in assessing reasonableness of the challenged eligibility criterion, given the lack of case law on election requirements for intermediate labor organizations generally and for joint councils specifically.

The fifth factor, "the degree of difficulty in meeting a qualification by union members," weighs against the reasonableness of the qualification. Here, the delegates cannot control whether their national union affiliates with the Metal Trades Department, even if they may urge such an affiliation. Moreover, it is not in Local 48's power to compel its national union, AFGE, to affiliate with the Metal Trades Department. While Local 48 may have

some say, it cannot make a decision on the issue.

 Apart from the five-factor analysis, which need not be considered exhaustive in assessing reasonableness, the Bremerton Council argues that the qualification is reasonable by analogy to the common requirement that candidates for union office must be members in good standing. Indeed § 481(e) accords the rights to become a candidate and to hold office only to "member[s] in good standing." The analogy is imperfect. Union members who are not in good standing have been delinquent in their individual obligations as union members. However, this cannot be said of the Bremerton Council's local union members whose national organizations have not affiliated with the Metal Trades Department, because neither the Bremerton Council nor the Metal Trades Department requires unions whose locals are members of the Bremerton Council to affiliate nationally with the Metal Trades Department. Instead, the Metal Trades Department and the Bremerton Council have created two classes of membership for local councils like the Bremerton Council: 1) local unions whose nationals have affiliated with the Metal Trades Department and whose delegates may run for office, and 2) local unions whose nationals are not so affiliated and whose delegates may not run for office. This system is undemocratic and, in the absence of valid competing concerns, appears to contravene the goal of Title IV of the LMRDA of "provid[ing] free and democratic elections." *Casumpang,* 269 F.3d at 1052 n. 6 (citation and internal quotation marks omitted). We reject the Bremerton Council's analogy and conclude that the challenged qualification is not equivalent to a permissible "member in good standing" requirement to run for office.

Even if some points weigh in favor of the reasonableness of the qualification, on this limited record they are insufficient conclusively to establish its reasonableness. Although summary judgment may be appropriate in some cases assessing reasonableness, further proceedings are necessary here to develop and weigh all the facts and circumstances, and thus to assess the novel question whether the eligibility restriction is reasonable. The district court erred in granting summary judgment in favor of the Bremerton Council on this limited record. A deeper record on relevant issues is necessary to determine whether the qualification was reasonable in all the circumstances.

**REVERSED** and **REMANDED** for further proceedings consistent with this opinion.