# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 22, 2008

Charles R. Fulbruge III
Clerk

No. 07-41285

RODOLFO GUTIERREZ

Plaintiff-Appellant

v.

RAMIRO FLORES, AURELINO GARCIA, HECTOR GALLARDO, and DEBORAH GODING

Defendants-Appellees

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before BARKSDALE, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

This case involves a dispute among members of the American Federation of Government Employees, Local 2142 (the "union"). Appellant Rodolfo Gutierrez ("Gutierrez"), a former Vice President of the union, brought suit in Texas state court alleging libel, libel per se, and intentional infliction of emotional distress. Appellees removed the action to federal district court, alleging that Gutierrez's claims were completely preempted by federal law under the Civil Service Reform Act of 1978, 5 U.S.C. § 7101 et seq. ("CSRA"). The district court denied Gutierrez's motion to remand the case to state court and subsequently granted Appellees' motion for summary judgment. Based upon the

unique circumstances presented here, we find that the CSRA does not completely preempt Gutierrez's claim. Therefore, the motion to remand should have been granted. Because we find that no federal subject matter jurisdiction existed, we vacate the district court's judgment and remand this case to the district court with instructions to remand the cause to Texas state court.

I.

Gutierrez is a federal government employee at the Corpus Christi Army Depot, located at Naval Air Station–Corpus Christi. Ramiro Flores, Aurelino Garcia, Hector Gallardo, and Deborah Goding (collectively, "Appellees") are also federal government employees at the Corpus Christi Army Depot. At all relevant times, Gutierrez, Flores, Garcia, Gallardo, and Goding were members of the union.

From 1997–2000, while Gutierrez was a Vice President of the union, he was responsible for renting meeting rooms for the monthly union meetings. Gutierrez received a check for $250 from the union treasurer, of which $95 was for the room rental cost and $155 was for the cleaning deposit. Gutierrez would clean the room himself after the meetings and retain the $155 deposit. In January 2000, a new union board was elected, including Jose Gonzales as President, Kenneth Weeks as Chief Steward, and Deborah Goding as Secretary. At the January 2000 meeting, Gutierrez admitted to keeping the cleaning deposit, and the newly elected board asked him to discontinue the practice, which he did. Goding contacted the U.S. Department of Labor ("DOL") and the Federal Bureau of Investigation ("FBI") regarding Gutierrez's actions. The DOL, FBI, and Department of Defense, Criminal Investigations Division ("CID") conducted a joint investigation. In 2001, DOL and FBI investigators interviewed Goding and told her "we know" that Gutierrez retained the cleaning deposits.

On June 12, 2002, DOL and CID investigators interviewed Gutierrez. Gutierrez signed a voluntary statement stating, "I kept the difference,

approximately $155 per month, for my own personal benefit and use." Furthermore, the statement provided that, "I've been informed that the total amount that I kept without membership consent or approval exceeds $4000." On October 2, 2002, the DOL issued a "report of investigation" summarizing its findings, noting that "[e]vidence established that between November 1997 and January 2000, while on government property, Gutierrez embezzled not less than $4325 by retaining the union's deposit ($150) on the monthly membership meeting room rather than returning it to the local after the meeting." Notwithstanding such findings, the government declined to prosecute Gutierrez.

In the spring of 2004, the Department of the Army (the "Army") suspended Gutierrez for thirty days for retaining the cleaning deposits. Gutierrez–still a Vice President of the union–challenged the suspension via an appeal to the Merit Systems Protection Board ("MSPB").[1] Goding was a witness for the Army at the MSPB hearing. Shortly before the hearing, Goding learned from Army personnel that Gutierrez had signed the voluntary statement in June 2002 and she learned from a former union official that the Army had taken personnel action against Gutierrez. At the hearing, Gutierrez was represented by an employee of the union's national office.

Goding was upset that Gutierrez remained a union official and that union funds were spent on his representation. Goding spoke with three other union members–Flores, Garcia, and Gallardo–about this matter. On June 23, a letter was mailed to the DOL, John Cage (the union's National President), and Jose Gonzales (the union's Local President).[2] The letter stated that Gutierrez "was found guilty by the [DOL] and [FBI] for Embezzlement of Union monies for

---

[1] An administrative law judge of the MSPB ultimately reversed Guiterrez's suspension, finding that "the agency has not proven by preponderant evidence that the appellant's actions regarding the cleaning deposit money was done without approval of the union."

[2] The letter was signed by Flores, Garcia, and Gallardo. Goding wrote the letter, but it is unclear from the record why she did not sign the letter.

approximately $4000.00." The letter also asked why "a representative" was provided "at the expense of the Union" and why Gutierrez was not removed from union office when he had "signed a statement for the [DOL] admitting he took these funds and . . . never attempted to reimburse [the union]." The letter was not shown to any other person, including other union members.

In June 2005, Gutierrez brought suit against Flores, Garcia, and Gallardo in Texas state court alleging libel, libel per se, and intentional infliction of emotion distress as a result of the June 2004 letter. On July 1, 2005, Goding sent an e-mail to Kenneth Weeks, then Chief Steward of the union, stating that the union should provide Flores, Garcia, and Gallardo with representation. The e-mail stated that Gutierrez committed "theft" and had been found "guilty."

On July 14, 2005, the case was removed to federal district court under the theory that complete preemption of the claims by the CSRA created federal question jurisdiction. The district court denied Gutierrez's motion for remand.[3] Gutierrez amended his complaint on December 22, 2006, by adding Goding as a defendant and alleging that the July 1 e-mail from Goding to Weeks was a defamatory document. After the case was transferred to another district court judge, Appellees filed a motion for summary judgment. In his opposition to the motion for summary judgment, Gutierrez expressly abandoned his intentional infliction of emotional distress claim.

By order dated November 16, 2007, the district court granted Appellees' motion for summary judgment, finding that, under Texas law, Gutierrez could not establish that Appellees were liable for libel.[4] Specifically, the district court

---

[3] The district court concluded "that this case presents a federal question and that remand is improper . . . for reasons that will be forthcoming." However, the district court did not issue a subsequent order explaining its rationale.

[4] We note the apparent conflict presented by the grant of summary judgment on state law grounds after the first district court judge concluded that removal was proper due to complete preemption by federal law. However, we need not address this issue because, as

held that because Appellees enjoyed a qualified privilege, Gutierrez had to establish actual malice, which he failed to do. Furthermore, the district court held that "there is no evidence that [Appellees'] statements were objectively untrue." Gutierrez timely appealed from the denial of his motion to remand and the grant of summary judgment for Appellees.

## II.

We review the denial of a motion to remand to state court de novo. Campbell v. Stone Ins., Inc., 509 F.3d 665, 669 (5th Cir. 2007). We also review the grant of summary judgment de novo. Id. Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.

Gutierrez argues that the district court did not have federal question jurisdiction because no federal question is presented on the face of his well-pleaded complaint. Accordingly, Gutierrez argues that the district court should have remanded. We agree.

A. Removal Jurisdiction

A district court has removal jurisdiction in any case where it has original jurisdiction. 28 U.S.C. § 1441(a). A district court has original federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The defendant seeking removal bears the burden of demonstrating that a federal question exists. In re Hot-Hed, Inc., 477 F.3d 320, 323 (5th Cir. 2007). Because removal raises significant federalism concerns, the removal statute is strictly construed "and any doubt as to the propriety of removal should be resolved in favor of remand." Id.

---

discussed below, we find that the case was not properly removed in the first instance.

Under the well-pleaded complaint rule, "a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint; generally, there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action." Bernhard v. Whitney Nat'l Bank, 523 F.3d 546, 551 (5th Cir. 2008). "[T]he fact that federal law may provide a defense to a state claim is insufficient to establish federal question jurisdiction." Id. at 550.

In his original complaint, Gutierrez pleaded libel, libel per se, and intentional infliction of emotional distress. These causes of action arise under Texas statutory and common law. See Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (2005) (libel); Doubleday & Co. v. Rogers, 674 S.W.2d 751, 759 (Tex. 1984) (libel per se); Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993) (intentional infliction of emotional distress). Appellees correctly note, however, that "[a] corollary to the well-pleaded complaint doctrine is that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."[5] Johnson v. Baylor Univ., 214 F.3d 630, 632 (5th Cir. 2000) (internal quotation omitted).

---

[5] "'Complete preemption,' which creates federal removal jurisdiction, differs from more common 'ordinary preemption' (also known as 'conflict preemption'), which does not." Johnson v. Baylor Univ., 214 F.3d 630, 632 (5th Cir. 2000). As the Johnson court noted:

> Ordinarily, the term federal preemption refers to ordinary preemption, which is a federal defense to the plaintiff's suit and may arise either by express statutory term or by a direct conflict between the operation of federal and state law. Being a defense, it does not appear on the face of a well-pleaded complaint, and, thus, does not authorize removal to a federal court. By way of contrast, complete preemption is jurisdictional in nature rather than an affirmative defense to a claim under state law. As such, it authorizes removal to federal court even if the complaint is artfully pleaded to include solely state law claims for relief or if the federal issue is initially raised solely as a defense.

Id. (quoting Heimann v. Nat'l Elevator Indus. Pension Fund, 187 F.3d 493, 500 (5th Cir. 1999)).

This Circuit has stated that in order to establish complete preemption, the defendant must show that:

> (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.

Id. (internal citation omitted). This test for complete preemption was subsequently clarified by the Supreme Court in Beneficial National Bank v. Anderson, 539 U.S. 1 (2003), which shifted the focus of the last part of the test from Congress's intent that the claim be removable, to Congress's intent that the federal action be exclusive. Bernhard v. Whitney Nat. Bank, 523 F.3d 546, 553 (5th. Cir. 2008) (citing Beneficial, 539 U.S. at 11); see also Hoskins v. Bekins Van Lines, 343 F.3d 769, 776 (5th. Cir. 2003).

Appellees argue that the CSRA completely preempts Gutierrez's state law causes of action. In order to determine whether, under the first portion of the Johnson test, the CSRA contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law encompassing Gutierrez's claims, it is necessary to examine the authority relied on by the Appellees to support their claim of complete preemption. Thus, we now turn to a discussion of the CSRA.

B. The Civil Service Reform Act

The CSRA "comprehensively overhauled the civil service system." Lindahl v. Office of Pers. Mgmt., 470 U.S. 768, 773 (1985). The purpose of the statute is to "prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government." 5 U.S.C. § 7101(b). The CSRA

governs, inter alia, collective bargaining, union representation, and unfair labor practices in the federal government.

Appellees argue that the letter and e-mail at issue were intra-union communications of a CSRA union and, thereby, were protected under the CSRA such that any claim arising therefrom is completely preempted.[6] Appellees' preemption argument primarily relies upon appellate cases holding that the CSRA preempts federal government employees' federal and state law causes of action arising from adverse "personnel actions."[7] See 5 U.S.C. §2302. For example, this Court held in Rollins v. Marsh that the CSRA preempted a government employee's causes of action–including defamation–arising from his employment suspension. 937 F.2d 134, 137-40 (5th Cir. 1991); see also, e.g., Ayrault v. Pena, 60 F.3d 346 (7th Cir. 1995); Roth v. United States, 952 F.2d 611 (1st Cir. 1991); Saul v. United States, 928 F.2d 829 (9th Cir. 1991). The Rollins court explained that "[e]very circuit facing this issue has concluded that the remedies provided by the CSRA preempt state-law remedies for adverse personnel actions." 937 F.2d at 140. Furthermore, the Supreme Court found that the CSRA preempts a federal government employee's suit under the First Amendment and Bivens resulting from his demotion and reduction in pay. Bush v. Lucas, 462 U.S. 367 (1983). The Supreme Court explained that "[b]ecause such claims arise out of an employment relationship that is governed by

---

[6] The union consists exclusively of federal government employees. However, the national labor organization it is affiliated with, American Federation of Government Employees, AFL-CIO, is a "mixed" union because it represents both government employees and private sector employees. See Reed v. Sturdivant, 176 F.3d 1051, 1052 (8th Cir. 1999). Gutierrez does not dispute that the union–because it represents only government employees–is a "labor organization" under the CSRA but is not a "labor organization" under the Labor Management Reporting and Disclosure Act ("LMRDA"). Compare 5 U.S.C. § 7103 (CSRA definition) with 29 U.S.C. § 402 (LMRDA definition); see also Reed, 176 F.3d at 1052-54.

[7] Section 2302(a)(2)(A) defines "personnel action" to include, inter alia, appointments, promotions, transfers, performance evaluations, orders for psychiatric testing, and "any other significant change in duties, responsibilities, or working conditions."

comprehensive procedural and substantive provisions giving meaningful remedies against the United States, . . . it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy." Id. at 368 (emphasis added).

Appellees' reliance on personnel action cases is misplaced. Such cases rely upon Title II of the CSRA, 5 U.S.C. §2302 et seq., which concerns adverse employment actions, whereas this case arises from Title VII of the CSRA, 5 U.S.C. § 7101 et seq., regarding union affairs. Rollins, Bush, and the many other cases cited by Appellees concern disputes arising from the employment relationship wherein a government employer or supervisor takes an action against a government employee that allegedly violated the merit principles outlined in Title II of the CSRA. See Roth, 952 F.2d at 614 (noting that "a prohibited personnel practice" under the CSRA is "a personnel action violative of the merit principles"). In contrast, this case does not involve the employment relationship or any adverse employment action.[8] Gutierrez is suing four members of the union solely based upon union-related activities. Therefore, the finding of complete preemption in the aforementioned cases does not dictate our holding here.

Appellees next rely upon the Supreme Court's holding in Karahalios v. National Federation of Federal Employees, Local 1263. 489 U.S. 527 (1989). In Karahalios, the Supreme Court determined whether Title VII of the CSRA "confers on federal employees a private cause of action against a breach by a union representing federal employees of its statutory duty of fair representation." Id. at 529. The Court noted that 5 U.S.C. § 7114(a)(1) creates

---

[8] We note that the Army suspended Gutierrez for thirty days as a result of the DOL/FBI/CID investigation. That adverse employment action is not in dispute, however, and this case solely concerns the allegedly defamatory letter and e-mail between members of the union.

a duty of fair representation for labor organizations. Id. at 531. The Court found that, under Title VII, "a breach of the duty of fair representation is an unfair labor practice, for it provides that it is 'an unfair labor practice for a labor organization . . . to otherwise fail or refuse to comply with any provision of this chapter.'"[9] Id. at 532 (quoting 5 U.S.C. § 7116(b)(8)). Under § 7118(a)(1), "unfair labor practice complaints" are adjudicated by the Federal Labor Relations Authority ("FLRA").[10] Id. Finding that the duty of fair representation "is expressly recognized in the" CSRA and "an administrative remedy for its breach is expressly provided for before the FLRA," the Supreme Court concluded that "neither the language nor the structure of the Act shows any congressional intent to provide a private cause of action to enforce federal employees unions' duty of fair representation." Id. at 533. Therefore, the plaintiff's claim that the union violated its duty of fair representation had to be brought before the FLRA. Id. at 536–37.

Appellees argue that Karahalios stands for the proposition that the comprehensive regulatory scheme outlined in the CSRA precludes an employee from suing his union. This contention is accurate when an employee alleges that his union committed an "unfair labor practice." See id. at 532; see also

---

[9] Sections 7116(b)(1)-(8) list actions of a labor organization that constitute unfair labor practices. The actions listed in subparagraphs (1) through (7) are not applicable in Karahalios or this case. Thus, for an action to constitute an unfair labor practice it must fall within the catch-all provision of subparagraph (8), providing that it is an unfair labor practice "to otherwise fail or refuse to comply with any provision of this chapter." 5 U.S.C. § 7116(b)(8).

[10] Section 7118(a)(1) provides that:

If any agency or labor organization is charged by any person with having engaged in or engaging in an unfair labor practice, the General Counsel shall investigate the charge and may issue and cause to be served upon the agency or labor organization a complaint. In any case in which the General Counsel does not issue a complaint because the charge fails to state an unfair labor practice, the General Counsel shall provide the person making the charge a written statement of the reasons for not issuing a complaint.

Montplaisir v. Leighton, 875 F.2d 1, 3 (1st Cir. 1989) (finding that employees' state law malpractice claims against union lawyers constituted "unfair labor practice charges" such that claim must be brought before FLRA). Section 7118 provides that "any agency or labor organization" charged "with having engaged in or engaging in an unfair labor practice" shall be investigated by the General Counsel of the FLRA. 5 U.S.C. § 7118(a)(1) (emphasis added). The section then provides a detailed administrative scheme to be followed in such actions before the FLRA. See 5 U.S.C. §7118(a)(2)-(8).

Appellees' argument fails here because Gutierrez does not allege that Appellees or the union committed an "unfair labor practice." As explained above, the CSRA provides that it is an unfair labor practice "to otherwise fail or refuse to comply with any provision of this chapter." 5 U.S.C. § 7116(b)(8). Unlike the plaintiffs in Karahalios and Montplaisir, Gutierrez is not alleging that Appellees violated a duty established under the CSRA. Rather, on the face of his well-pleaded complaint, he alleges that Appellees' letter and e-mail were defamatory and intended to inflict emotional distress. Nothing in the CSRA pertains to this specific scenario. Accordingly, because Gutierrez does not allege an "unfair labor practice," Karahalios does not govern this case.

Finally, Appellees argue that § 7120 of the CSRA provides the basis for complete preemption in this context. Section 7120, entitled "[s]tandards of conduct for labor organizations," establishes the standards a labor organization must meet in order to be recognized by a government agency. These standards include, inter alia, "the prohibition of business or financial interests on the part of organization officers and agents which conflict with their duty to the organization and its members." 5 U.S.C. § 7120(a)(3); see also 29 C.F.R. § 458.31. Section 7120(d) provides that "[c]omplaints of violations of this section shall be filed with the Assistant Secretary [of Labor for Labor Management Relations]." Appellees argue that Gutierrez's retention of union funds was a

11

"financial interest . . . in conflict with . . . [his] duty to the organization" and, thereby, violated § 7120(a)(3).  Accordingly, Appellees argue, the CSRA provides that this case should be brought before an administrative body and complete preemption is established.

Even assuming that Gutierrez's actions violated §7120(a)(3), complete preemption would not be established.  Appellees' invocation of § 7120 merely constitutes a possible defense for Appellees' decision to send the letter and e-mail and does not establish that the CSRA completely preempts Gutierrez's claims.[11]  Appellees argue that because Gutierrez violated § 7120(a)(3) they were entitled to send the letter and e-mail–i.e., they raise a defense.  As discussed above, however, it is well established that "the fact that federal law may provide a defense to a state claim is insufficient to establish federal question jurisdiction."  Bernhard, 523 F.3d at 550.  Whether Gutierrez obtained a financial interest in violation of  § 7120 bears no relation to whether  Gutierrez's state law claims alleged that an "agency or labor organization . . . engag[ed] in an unfair labor practice" under § 7118(a)(1).

In sum, because this case does not concern an adverse personnel action or an unfair labor practice, the cases Appellees rely upon are inapposite. Appellees have not satisfied the first portion of the complete preemption test—that the CSRA contains a civil enforcement provision that creates a cause of action that replaces and protects Gutierrez's state law claims for libel, libel per se, and intentional infliction of emotional distress.  Based upon the unique circumstances presented here and the particular cause of action at issue, we find that Appellees have not met their burden of establishing that the CSRA completely preempts Gutierrez's claim.  Therefore, federal question jurisdiction

---

[11] The same logic applies to Appellees' argument that their actions are protected because they fall under union members' protected free speech rights under 29 C.F.R. § 458.2(a)(2).  This argument constitutes a defense and, therefore, cannot be a predicate for removal.

is absent and the case should have been remanded to state court. In so holding, we do not make any determination as to the merits of Gutierrez's state law claim.

IV.

In light of the foregoing, we VACATE the judgment of the district court and REMAND with instructions to remand the case to state court.