IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 12, 2009

Charles R. Fulbruge III
Clerk

No. 08-10317

STANLEY M SCHWARTZ

Plaintiff-Appellant

v.

INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL
ENGINEERS, AFL-CIO; ASSOCIATION OF ADMINISTRATIVE LAW
JUDGES JUDICIAL COUNCIL NO 1 INTERNATIONAL FEDERATION OF
PROFESSIONAL AND TECHNICAL ENGINEERS AFL-CIO CLC;
CHRISTOPHER L WILLIAMS; DONALD J WILLY

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:07-cv-00978

Before SMITH, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Stanley M. Schwartz ("Schwartz"), proceeding pro se,

appeals the district court's order denying his motion to remand.[1]  Schwartz

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

[1] Schwartz challenges only the denial of his motion to remand; he does not assert any
error in the district court's dismissal of his case in the same order denying his motion to
remand.

argues that the district court lacked jurisdiction and, in finding that the Civil Service Reform Act of 1978 ("CSRA" or "Act"), Pub. L. No. 95-454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.), preempted his state-law intentional infliction of emotional distress claims, "exceeded its authority" by impermissibly engaging in judicial review of an Office of Special Counsel ("OSC") decision. Specifically, he argues that the court improperly reviewed the OSC's decision to terminate its investigation into the conduct underlying this suit on the ground that the conduct did not constitute a "prohibited personnel practice." For the reasons explained below, we AFFIRM the district court's denial of Schwartz's motion to remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Since 1977, Schwartz has been employed as an administrative law judge ("ALJ") at the Social Security Administration's ("SSA") Dallas North Hearing Office ("DNHO"). In 2003, Schwartz became the Acting DNHO Chief Administrative Law Judge ("Acting Chief Judge") and held this position until stepping down on May 31, 2005. As Acting Chief Judge, Schwartz had various labor management responsibilities, including handling issues involving labor unions representing the ALJs, paralegals, attorneys, and staff at the DNHO. In particular, Schwartz frequently worked with two unions: the International Federation of Professional and Technical Engineers, AFL-CIO, CLC ("IFPTE"), which represents all SSA non-supervisory ALJs, and the Association of Administrative Law Judges Judicial Council No. 1, IFPTE, ALF-CIO, CLC ("AALJ"), which represents the DNHO ALJs. Shortly after Schwartz became Acting Chief Judge, significant conflicts developed between him and Christopher Williams ("Williams") and Donald J. Willy ("Willy") (collectively with the IFPTE and AALJ, "Appellees"), both of whom were AALJ representatives.[2]

---

[2] Williams, a non-supervisory ALJ at the DNHO, served as the DNHO's AALJ representative; Willy, an ALJ in the SSA's Houston Hearing Office, was the AALJ's regional

Schwartz asserts that Williams and Willy, on multiple occasions, accused him of directing an employee to falsify computer data and requiring ALJs to travel unnecessarily for hearings—conduct which, if true, could have subjected Schwartz to criminal prosecution and removal from office by the Merit Systems Protection Board ("MSPB"). When Schwartz denied Williams's and Willy's requests for unlimited access to the DNHO computer database to investigate the questioned data, Williams and Willy filed a union grievance. Williams then allegedly circulated an email to all DNHO ALJs, repeating his prior allegations, accusing Schwartz of impairing labor relations in the office, and further accusing Schwartz of engaging in retaliatory acts. Schwartz claims that these actions made him seriously ill and led him to step down as Acting Chief Judge. Shortly before he did, Williams and Willy filed a second allegedly baseless grievance against Schwartz, repeating their prior allegations and further accusing Schwartz of criminal conduct. When Schwartz publicly defended his actions, Williams sent him an acerbic email severely criticizing his performance as Acting Chief Judge and likening him to Nazi-collaborator Vidkun Abraham Lauritz Jonssen Quisling. Schwartz, who is Jewish, claims that this reference constituted blatant anti-Semitic harassment to which he took great offense. Williams's and Willy's antagonism of Schwartz allegedly continued even after Schwartz resigned his position as Acting Chief Judge, as the two purportedly lodged further meritless complaints about Schwartz to management and conspired to deprive him of his seniority status, resulting in Schwartz being relegated to inferior office space.

In response, Schwartz filed a complaint with the OSC alleging that Williams's and Willy's actions constituted "prohibited personnel practices" within the scope of the CSRA and sought sanctions against both. The OSC,

---

vice president and was tasked with handling union issues involving the DNHO.

however, concluded that Schwartz's complaint failed to identify a prohibited personnel practice and ended its investigation.

Schwartz subsequently filed this action in Texas state court, alleging claims of intentional infliction of emotional distress against Appellees.[3] IFPTE removed the case to the District Court for the Northern District of Texas on the ground that the CSRA completely preempted Schwartz's state-law claims and that the district court thus had original jurisdiction over the case pursuant to 28 U.S.C. § 1441(b). On October 31, 2007, the district court denied Schwartz's motion to remand and granted Appellees' motion to dismiss with prejudice, and on January 29, 2008, it denied Schwartz's motion for reconsideration. After the OSC also denied reconsideration of his claims, Schwartz moved for relief from judgment under Rule 60(b)(2) and 60(b)(6). The court denied the motion. This timely appeal of the district court's denial of Schwartz's motion to remand followed.[4]

We have jurisdiction over the district court's order denying Schwartz's motion to remand pursuant to 28 U.S.C. § 1291, and we review de novo its denial of the motion. S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 492 (5th Cir. 1996).

## II. DISCUSSION

---

[3] Prior to bringing this case, Schwartz filed an identical suit against Appellees in federal court with jurisdiction predicated upon diversity, but the court dismissed his case for want of complete diversity. See Schwartz v. Int'l Fed'n of Prof. & Technical Eng'rs, No. 3:07-cv-0555 (N.D. Tex. Apr. 26, 2007).

[4] In his Notice of Appeal, Schwartz states that he is appealing from "an order dismissing [his] motion to remand to state court, with prejudice, entered in this action on the 30th day of January, 2008." The district court actually entered the referenced order on October 31, 2007; the January 30, 2008 order denied Schwartz's motion for reconsideration. Because Schwartz's intent to challenge the denial of his motion to remand is clear from his brief, we construe Schwartz's appeal as an appeal of the October 31, 2007 denial of his motion to remand.

Schwartz's sole contention on appeal is that the district court exceeded its authority by determining whether any of Williams's and Willy's actions constituted a prohibited personnel practice so as to bring his claims within the coverage of the CSRA. Schwartz contends that this determination is properly left to the OSC and that the district court's judicial review of the OSC's decision must be limited to assessing whether the OSC complied with its statutory duties. Essentially, Schwartz argues that the OSC's determination that Williams's and Willy's actions did not constitute "prohibited personnel practices" and thus do not fall within the coverage of the CSRA was binding on the district court and that the court's independent determination that the CSRA did apply to Schwartz's claims was erroneous. Thus, his appeal implicates two questions: whether the district court properly determined that the CSRA completely preempted Schwartz's state-law claims so as to give it jurisdiction under § 1441(b) and whether this inquiry constituted an improper review of the OSC's decision to the contrary. We address each in turn.

A.

Typically, the "well-pleaded complaint rule" provides that "a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint" and "generally, there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action." Gutierrez v. Flores, 543 F.3d 248, 251-52 (5th Cir. 2008) (internal quotation marks omitted). However, "'[a] corollary to the well-pleaded complaint doctrine is that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" Id. at 252 (quoting Johnson v. Baylor Univ., 214 F.3d 630, 632 (5th Cir. 2000)) (alteration in original). As the district court noted, substantial authority supports the conclusion that the CSRA, which created an "elaborate new framework for evaluating adverse personnel actions against federal employees,"

United States v. Fausto, 484 U.S. 439, 443 (1988) (alteration and internal quotation marks omitted), was designed to provide the exclusive remedies for conduct constituting "prohibited personnel practices" and that the CSRA therefore preempts any judicial remedies for such claims, see, e.g., id. at 444, 454 (1988) (explaining that "[a] leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action . . . that was the civil system" and concluding that "[t]he CSRA established a comprehensive system for reviewing personnel action taken against federal employees"); Montplaisir v. Leighton, 875 F.2d 1, 3, 5 (1st Cir. 1989) (noting "the inescapable conclusion that Congress intended to preempt state-law tort actions" and explaining that courts have treated the CSRA as "establishing the sole mechanism for resolving labor conflicts in the federal arena"). Indeed, we have explicitly noted that "[e]very circuit facing this issue has concluded that the remedies provided by the CSRA preempt state-law remedies for adverse personnel actions." Rollins v. Marsh, 937 F.2d 134, 140 (5th Cir. 1991). Thus, if Williams's and Willy's actions were "prohibited personnel practices," Schwartz's claims based on them are completely preempted and the district court properly had jurisdiction.[5]

We have previously noted that, when assessing the breadth of the CSRA, "courts have given wide-berth to [its] preclusive effects." Guitart v. United States, 3 F.3d 439, 1993 WL 347206, at *3 (5th Cir. Aug. 19, 1993) (unpublished table decision). Accordingly, we have repeatedly discussed how "[t]he CSRA comprehensively overhauled the civil service system," e.g., Gutierrez, 543 F.3d

---

[5] The effect of challenged conduct constituting "prohibited personnel practices" within the scope of the CSRA is two-fold. First, a district court will have jurisdiction over any state-law claims based upon the conduct because the preempted claims will raise a federal question. Second, the court must dismiss the claims, as the only proper means for pursuing them is through the administrative framework provided by the CSRA. Schwartz, however, does not challenge the district court's dismissal of his claims; he only appeals the denial of his motion to remand.

at 253 (internal quotation marks omitted), and explained that "[t]he purpose of the statute is to 'prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government,'" id. (quoting 5 U.S.C. § 7101(b)). One way in which the CSRA achieves this goal is by prohibiting various personnel practices and providing an administrative system for addressing their commission. See 5 U.S.C. §§ 1214, 2302. Section 2302 expressly provides that

> [a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority . . . take or fail to take any . . . personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title.

Id. § 2302(b)(12). Section 2301, which explains the merit system principles, provides that "[a]ll employees . . . should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights." Id. § 2301(b)(2).

As the district court thoroughly explained, courts broadly construe the definition of "personnel action," see, e.g., Saul v. United States, 928 F.2d 829, 834 (9th Cir. 1991), and courts have found violations of § 2301(b)(2) even when none of the specific grounds for unfairness listed therein were implicated.[6] In his

---

[6] See, e.g., Rollins, 937 F.2d at 137 & n.13 (citing 5 U.S.C. § 2301(b)(2) and Saul, 928 F.2d at 833, for the general proposition that "[t]he merit-system principles include treating employees fairly and equitably and with proper regard for their privacy and constitutional rights" (internal quotation marks omitted)); Wilburn v. Dep't of Transp., 757 F.2d 260, 261-62 (Fed. Cir. 1985) (explaining that "the linchpin of federal personnel management is fairness, i.e., employees who are similarly situated are entitled to similar treatment" and stating that a government agency "undercut[] the merit system principles on which the [CSRA] was founded" by choosing to close a vacant position rather than hire the plaintiff because of reasons personal

pleadings, Schwartz alleged numerous actions that fall within the ambit of the CSRA. For example, Schwartz alleged that Williams and Willy conspired to strip him of his seniority status and that, as a result, he was relegated to inferior office space. We agree with the district court that such a change would constitute a change in "working conditions," and therefore amounts to a personnel action under 5 U.S.C. § 2302(a)(2)(xi). Indeed, as the district court explained,

> The crux of Schwartz's claim is that Willy and Williams prosecuted groundless grievances against him that they knew lacked foundation. In prosecuting the grievances, Willy and Williams were essentially recommending that Schwartz be disciplined for actions he had taken as Chief Judge. Thus, as union representatives, they were recommending a personnel action, within the meaning of the CSRA.

Schwartz v. Int'l Fed'n of Prof. & Technical Eng'rs, No. 3:07-cv-0978, 2007 WL 3196347, at *9 (N.D. Tex. Oct. 31, 2007) (unpublished). This is precisely the type of conduct to which the CSRA was designed to apply.

Thus, we hold that Williams's and Willy's alleged conduct constituted "prohibited personnel practices" and therefore fell within the coverage of the CSRA. Accordingly, Schwartz's state-law claims based upon these actions are completely preempted by the CSRA, and the district court properly had jurisdiction. Having determined that jurisdiction was proper, we turn to Schwartz's second contention: that the district court exceeded its authority by assessing the CSRA's applicability.

B.

Relying heavily on our decision in DeLeonardis v. Weiseman, 986 F.2d 725 (5th Cir. 1993), Schwartz next argues that the OSC's decision that the CSRA did not apply to his claims was binding on the district court and that review of the

to him).

OSC's decision exceeded the proper scope of judicial "authority." Although Schwartz is correct that "'it is . . . quite clear from the statutory language and legislative history [of the CSRA] that Congress did not mean to make the OSC's decisions to terminate or conduct an investigation . . . reviewable on the merits,'" DeLeonardis, 986 F.2d at 727 (quoting Wren v. Merit Sys. Prot. Bd., 681 F.2d 867, 875 n.9 (D.C. Cir. 1982)) (first omission in original), neither party here challenged the OSC's decision to terminate its investigation, and Schwartz's reliance on DeLeonardis is thus misplaced. In DeLeonardis, the OSC declined to perform a full investigation of an employee's claim of a prohibited personnel action, and the employee brought suit to compel the OSC to investigate. Id. at 726. We noted that the OSC has a duty to investigate such allegations, but refused to question the merits of the OSC's ultimate decision not to fully investigate. See id. at 726-27. We explained that "an employee's right to obtain judicial review of the OSC's decision not to pursue a complaint is 'limited to [the question of] whether the OSC discharged its duty to investigate the complaint.'" Id. at 727 (quoting Towers v. Horner, 791 F.2d 1244, 1246 n.14 (5th Cir. 1986)) (alteration in original). Accordingly, we held that "when the OSC decides to terminate an investigation that it began pursuant to a complaint, the decision is not reviewable," because it has discharged its statutory duty. Id.

Here, neither party asked the district court to review the OSC's decision to terminate its investigation. Rather, Schwartz's motion to remand presented the question of whether the CSRA, a federal law, applied to Williams's and Willy's alleged actions so as to completely preempt Schwartz's state-law claims and therefore give the district court jurisdiction. Federal courts are required to determine their jurisdiction, see, e.g., Williams v. Chater, 87 F.3d 702, 704 (5th Cir. 1996), and we have repeatedly stated that federal courts have jurisdiction to determine their own jurisdiction, see, e.g., Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc., 481 F.3d 265, 268 (5th Cir. 2007) (citing Cerveceria

9

Cuauhtemoc Moctezuma S.A. de C.V. v. Mont. Beverage Co., 330 F.3d 284, 286 (5th Cir. 2003)).

This is precisely what the district court did in the instant case. The district court's jurisdiction was predicated upon 28 U.S.C. § 1441(b) and its finding that the CSRA completely preempted Schwartz's state-law claims, and Schwartz's motion to remand challenged this jurisdiction. To assess its jurisdiction, the court therefore had to determine whether the CSRA in fact applied. This was completely separate from the OSC's decision, and the OSC's determination that the CSRA did not apply cannot forestall this inquiry.

Accordingly, the district court did not exceed its authority by determining that the CSRA applied to Schwartz's claims so as to provide it with jurisdiction. The court therefore properly denied Schwartz's motion to remand.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Schwartz's motion to remand.

AFFIRMED.