Opinion issued April 7, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00994-CV

———————————

Cathy Anderson, Appellant

V.

American
Federation of Government Employees, AFL-CIO; American
Federation of Government Employees, AFL-CIO, DISTRICT 10; American Federation of Government Employees,
AFL-CIO, COUNCIL 215; American
Federation of Government Employees, AFL-CIO, LOCAL 3506, Appellees



 



 

On Appeal from the 157th District Court 

Harris County, Texas



Trial Court Case No. 2009-24849

 



 

O P I N I O N

          In
this appeal, we decide whether a federal government employee’s state law tort
claims against a labor union are completely preempted by the Civil Service
Reform Act of 1978.  See 5 U.S.C. §§ 2301–2305 (West 1994 & Supp. 2010), 5 U.S.C. §§ 7101–7154 (West 1996 & Supp. 2010) (West
2010).  Finding no complete preemption
under the circumstances presented in this case, we reverse and remand.

BACKGROUND

          Anderson was a
group supervisor for the Social Security Administration Office of Disability
Adjudication and Review [“ODAR”] in Houston, Texas.  Scott Stier was a case intake assistant and
reported to Anderson.  On July 24, 2007,
Anderson issued a proposed three-day suspension to Stier for failing to
associate mail in a timely manner.  On
October 2, 2007, Stier sent a letter to the Agency’s Office of Special Counsel,
in which he asserted that Anderson had been confiscating and hoarding his mail,
thereby violating his due process rights. 
Stier also sent a copy of this letter to Anderson, Melissa Huett, a
hearing office manager for ODAR, and Mark Mephail, a hearing office
administrative law judge for ODAR.  On
November 1, 2007, Huett placed Stier on a one-day suspension, rather than the
three-day suspension recommended by Anderson.

          Stier
appealed his suspension to the Merit Systems Protection Board, alleging that
ODAR’s suspension of him was in retaliation for his complaint about Anderson.
On July 15, 2008, an administrative law judge [“ALJ”] upheld Stier’s
suspension.  In his order, the ALJ
stated, “I find, however that because Huett’s decision to suspend [Stier] was
issued . . . just four months after the disclosure of which she had knowledge,
a reasonable person could conclude that the disclosure was a contributing
factor in the agency’s decision to suspend [Stier].”  Nevertheless, the ALJ upheld Stier’s
suspension because he found that ODAR would have taken the personnel action
against Stier even if there had been no whistleblowing involved.

          According
to allegations in her petition, Anderson discovered in February or early March
of 2009 that Stier, who was also an Executive Vice-President of Local 3506 of
the American Federation of Government Employees, AFL-CIO, had been sending
emails to other union members in Anderson’s office that contained a link to the
Local 3506’s website where they would find “disturbing” information about
Anderson.  Anderson accessed the website
and found the following summary of Stier’s personnel matter:  “ . . . the [ALJ] found that Stier’s disclosure
was based on a reasonable belief that Anderson was hoarding mail and that
action constituted an abuse of her authority.”

          After
seeing the information about her on the union’s website, Anderson filed suit in
state court against the American Federation of Government Employees, including
the Local 3506, Council 215, and District 10 [hereafter, collectively “the
union.”], alleging libel, slander, and intentional infliction of emotional
distress.[1]

          The
union filed a motion to dismiss based on lack of subject-matter
jurisdiction.  Specifically, the union
claimed that Anderson’s state tort claims were preempted by the Civil Service
Reform Act of 1978 [“CSRA”], which is codified in Title 5 of the United States
Code.  The trial court granted to union’s
motion and dismissed Anderson’s case. 
This appeal followed.

PREEMPTION
UNDER THE CSRA

Standard
of Review and Applicable Law on Preemption

In filing a plea to the jurisdiction, a litigant
challenges the trial court’s subject-matter jurisdiction. Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). In order to
prevail, the party asserting the plea must show that, even if all the
allegations in the plaintiff’s pleadings are taken as true, there is an
incurable jurisdictional defect apparent from the face of the pleadings,
rendering it impossible for the plaintiff’s petition to confer jurisdiction on
the trial court. Rylander v. Caldwell, 23 S.W.3d 132, 135 (Tex. App.—Austin
2000, no pet.).

Because
subject-matter jurisdiction is a question of law, we conduct
a de novo review of the trial court’s ruling on the plea. See Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998). Upon review, we consider the pleadings and the
evidence pertinent to the jurisdictional inquiry. Cnty. of Cameron v.
Brown, 80 S.W.3d 549, 555 (Tex. 2002). We do not consider the merits
of the case; our jurisdiction is limited to reviewing the grant or denial of
the plea to the jurisdiction that was filed. Id.; see also Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(8) (Vernon Supp. 2010); Brenham Hous. Auth. v. Davies, 158
S.W.3d 53, 61 (Tex. App.—Houston [14th Dist.] 2005, no pet.); City of Dallas v. First Trade Union Sav. Bank, 133 S.W.3d 680, 686–87
(Tex. App.—Dallas 2003, pet. denied).  We do not have jurisdiction to
consider grounds outside those raised in the plea to the jurisdiction. First
Trade Union Sav. Bank, 133 S.W.3d at 687; Davies, 158
S.W.3d at 61.

          In its motion to dismiss, the union acknowledged that Anderson’s
petition alleged state court causes of action, see
Tex.
Civ. Prac. & Rem. Code Ann.
§ 73.001 (2005) (libel); Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993)
(intentional infliction of emotional distress), but argued that Anderson’s
state court causes of action were completely preempted by the CSRA.  To establish complete preemption, a defendant
must show that:

(1) the federal statute contains a civil enforcement
provision that creates a cause of action and both replaces and protects the
analogous area of state law;

 

(2) there is a specific jurisdictional grant to the federal
courts for enforcement of the right; and

 

(3) there is a clear Congressional intent that the claims
brought under the federal law be removable to federal court. 



Johnson v. Baylor Univ., 214 F.3d 630, 632 (5th Cir. 2000).  To determine whether the
union has established the first element of the Johnson test, we must review the provisions of the CSRA upon which
it relies.

The Civil Service Reform Act

          In its motion to dismiss, the union
alleged two bases for its contention that the CSRA completely preempts
Anderson’s state court causes of action. 
First, the union argued that Anderson’s suit involved a “prohibited
personnel action” and thus was preempted by section 2303 of the CSRA.  Second, the union argued that Anderson’s suit
alleged an “unfair labor practice” by the union and thus was preempted by
section 7101 of the CSRA. We will address each respectively.

 

 

1. Title II of the CSRA, 5 U.S.C. § 2302 et seq., Prohibited
Personnel Action

           Federal employees
are generally precluded from bringing state tort claims when the claims arise
“out of an employment relationship that is governed by comprehensive procedural
and substantive provisions” which provide meaningful remedies.  Bush v.
Lucas, 462 U.S. 367, 368, 103 S. Ct. 2404, 2406 (1983). The CSRA
affords such remedies to federal employees. The Act provides “an integrated
scheme of administrative and judicial review, designed to balance the
legitimate interests of the various categories of federal employees with the
needs of sound and efficient administration.” United States v. Fausto, 484
U.S. 439, 445, 108 S. Ct. 668, 672 (1988). The CSRA authorizes federal
employees to challenge “prohibited personnel practices” by their supervisors. See 5
U.S.C. § 2302; Saul v. United States, 928 F.2d 829, 833, 834
(9th Cir. 1991) (employee had redress under CSRA for claims of defamation
by supervisor). It is founded upon certain merit-system principles that govern
civil service employment and provides that employees are to be treated fairly
and equitably and “with proper regard for their privacy and constitutional
rights.” 5 U.S.C. § 2301(b)(2).

Under the Act, prohibited personnel practices
include the taking of any “personnel action” that violates its merit-system
principles. 5 U.S.C. § 2302. Specifically, a prohibited personnel practice
means any action that is described in subsection (b) of Section 2302,
which states that “any employee who has authority to take, direct others to
take, recommend, or approve any personnel action, shall not, with respect to
such authority,” engage any of the prohibited acts listed in the subsection. 5
U.S.C. § 2302(b)(1)–(11). Therefore, an integral element of a “prohibited
personnel practice” is the taking of “personnel action” which is defined to
include actions such as, but not limited to, an appointment, a promotion, a
disciplinary or corrective action, a detail, transfer or assignment, or a
decision concerning pay, benefits, or education or training. 5 U.S.C. §
2302(a)(2)(A). Thus, essentially, when a plaintiff’s claims arise out of his or
her employment relationship with the federal government and all supervisory
actions taken by the defendants are related to the plaintiff's status as a
federal employee, the actions constitute personnel decisions under the CSRA,
and are therefore exclusively remedied thereunder. Rollins v.
Marsh, 937 F.2d 134, 138 (5th Cir. 1991). 
Thus, the question this Court must decide is whether Anderson’s claim
alleges the taking of a “personnel action” within the meaning of the CSRA.

The union relies on Bush, Fausto, Saul, and Rollins, in support of its argument that Anderson’s claims are
preempted. 462 U.S. at 367; 484 U.S. at 439; 928 F.2d at 843; 937 F.2d at 138. In
Bush, the plaintiff, an aerospace
engineer for NASA, complained on television that his job was “worthless,” a “travesty,”
and that NASA was fraudulently spending taxpayer money. 462 U.S. at 369–70.  He was subsequently demoted and his pay grade
was reduced.  Id. at 370. Bush then filed suit against Lucas, the director of NASA,
for defamation.  Id. at 371. After Bush’s suit was dismissed, the Fifth Circuit
affirmed, holding that in light of the remedies available under the CSRA, Bush
had no private cause of action.  Id

In Fausto,
the plaintiff, an employee of the Department of the Interior Fish and Wildlife
Service, was suspended from his job for 30 days. 484 U.S. at 439.  He then filed suit against the United States
seeking back pay under the federal Back Pay Act.  Id.
at 443.  The Court of Appeals held that
his suspension was unlawful and awarded Fausto back pay for the period of his
suspension.  Id.  The Supreme Court
reversed, holding that “[t]he CSRA established a
comprehensive system for reviewing personnel action taken against federal
employees.” Id. at 455.

In Saul, a Social Security
Administration claims administrator sued two of his supervisors alleging that
they had seized and opened his private mail and defamed him.  928 F.2d at 831.  The Ninth Circuit held that the CSRA
preempted Saul’s common law tort claims because his petition alleged prohibited
personnel practices by his supervisors.  Id. at 833–34. 

In Rollins, the
plaintiff, a federal government employee for the Army, took nude pictures of
his wife, also a federal government employee for the Army, which were
subsequently published in Hustler Magazine. 
937 F.2d at 135–36.  As a result,
Rollins was temporarily suspended from his job and his wife lost her security
clearance.  Id. at 136. Rollins appeal his removal to the Merit Systems
Protection Board, and the ALJ held that Rollins’s removal was a prohibited
personnel action under the CSRA and ordered Rollins reinstated.  Id. The Rollinses then filed
suit, naming the Secretary of the Army and fifteen supervisors and employees as
defendants. Id. The complaint alleged
violations of a broad array of federal constitutional and statutory rights as
well as state-law rights such as defamation. 
Id.  The Fifth Circuit held that because the
Rollinses’ claims arose out of their employment relationship with the federal
government, and all the actions taken by the defendants
were related to their status as federal employees, the actions taken against
them were personnel decisions under the CSRA. Id. at 138.
As such, the
remedies provided by the CSRA preemped the Rollinses’ state-law remedies for
adverse personnel actions.  Id. at 140.

In this case, the union’s reliance on Bush, Fausto, Saul, and Rollins is
misplaced.  Each of those cases involve
an allegation of a prohibited personnel practice against the plaintiff, and the
plaintiff’s alleged claims arose directly out of those prohibited personnel
practices.  Such is not the case here,
where Anderson alleges no personnel action against her by her federal employer.  

Instead, we believe that the present case is
more like Gutierrez v. Flores, 543
F.3d 248 (5th Cir. 2008) and Gilding v.
Carr, 608 F. Supp. 2d 1147 (D. Ariz. 2009). In Gutierrez, the plaintiff, a federal employee of the Army and union
representative, received a 30-day suspension from the Army, his employer, after
an investigation revealed that Gutierrez had been taking money that his union
had intended for him to use to pay a cleaning services for its meeting room and
then cleaning the room himself. 543 F.3d at 249–250.  After
learning that the Army had taken personnel action against Gutierrez, a fellow
union member sent a letter to the Department of Labor and the local and national
presidents of the union asking why Gutierrez had been provided a representative
at union expense when he had acknowledged taking funds from the union. Id. at 250. Based on this letter,
Gutierrez sued three fellow union members in state court, alleging libel, libel
per se, and intentional infliction of emotional distress. Id. The case was removed to federal court, and Gutierrez moved to
remand.  Id. at 251.  The union, relying on Bush, Saul, and Rollins, contended that remand was inappropriate because Gutierrez’s
state law causes of action were completely preempted by the CSRA.  Id.
at 253.  The Fifth Circuit held that the
union’s reliance on those cases was misplaced because those cases concerned
“disputes arising from the employment relationship wherein a government
employer or supervisor takes an action against a government employee that allegedly
violated the merit principles outlined in Title II of the SCRA.”  Id.
at 253.  In contrast, Gutuerrez’s claim
did “not involve the employment relationship or any adverse employment
action.”  Id. at 254.  Although there
was an “adverse employment action”—Gutierrez’s suspension by the Army—his suit against the union
solely concerned the allegedly defamatory letter sent by union members about
his suspension.  Id. at 254 n.8. Similarly,
in this case, no employment action was alleged to have been taken against
Anderson.  Furthermore, the subject of
Anderson’s defamation suit is not any statements that were made during the
course of Stier’s disciplinary proceeding. 
Instead, Anderson’s suit against the union is based solely on the
alleged defamatory statements that the union published about her on its
website.

          In Gilding,
the plaintiff, a manager with the Federal Aviation Administration [“FAA”] sued
a former FAA employee, two air traffic controllers assigned to his office who
were also local union officers, and the air traffic controllers’ union for
allegedly publishing defamatory statements about him on a blog.  608 F. Supp. 2d at 1149–50.  Gilding alleged that because of the
defamatory blog, he was placed on administrative leave and removed from his
managerial position.  Id. at 1150.  He did not sue the FAA or any of the
employees involved in the decision to remove him from his managerial
position.  Id.  The court noted that the
CSRA prohibits only “personnel practices” that are undertaken by “any employee
who has authority to take, direct others to take, recommend or approve any
personnel action” with respect to the plaintiff.”  Id.
at 1151 (quoting 5 U.S.C. § 2302(b)). The court then concluded that the union
was clearly not “an employee” who could recommend or approve a personnel action
against Gilding.  Id. at 1152.  As such,
Gilding’s defamation claim against the union was not preempted.  Id. at
1154.[2]
Here, as in Gilding, the only
defendant is the union that Anderson contends defamed her.  And, as in Gilding, there is no evidence that the union was taking,
recommending, or approving any personnel action against Anderson when it placed
the allegedly defamatory statements about her on its website.

          Because Anderson’s complaint does not
involve a “prohibited personnel practice” by an “employee who has authority to
take, direct others to take, recommend or approve any personnel action” against
Anderson, section 2302 of the CSRA does not preempt her defamation claim
against the union.

2.  Title VII of the
CSRA, 5 U.S.C. § 7101 et seq., Unfair Labor Practices

          The union also argues that Anderson’s
claims are preempted under section 7107 et seq., which governs union affairs
and collective bargaining agreements. Title VII of the CSRA allows collective
bargaining in the public sector and provides a detailed methodology for dispute
resolution.  See 5 U.S.C. §§ 7116(d), 7121, 7122.   The statute created
the Federal Labor Relations Authority [“FLRA”] and gave it the responsibility
of supervising the collective bargaining process, promulgating administrative
rules for federal labor relations, and adjudicating disputes over matters such
as negotiability, bargaining units, arbitration, and representation
elections.  Montplaisir v. Leighton, 875 F.2d 1, 2 (1st Cir. 1989).  

Section 7118 of the CSRA provides that “any agency or labor
organization” charged “with having engaged in or engaging in an unfair labor
practice” shall be investigated by the General Counsel for FLRA.  5 U.S.C. § 7118(a)(1).  The
section then provides a detailed administrative scheme that must be followed in
actions before the FLRA.  See 5 U.S.C. § 7118(a)(2)–(8).  The union argued that because Anderson did
not file a grievance for an “unfair labor practice,” she cannot now proceed
with her state court claims.  Thus, the
issue this Court must decide is whether Anderson’s claim alleges an “unfair
labor practice.”  

            Section 7116 of the CSRA provides
that it is an unfair labor practice for a union: 

 

(1) 
to interfere with, restrain, or coerce any employee in the exercise by
the employee of any right under this chapter [5 USCS §§ 7101 et seq.];

 

(2) to cause or attempt to cause an
agency to discriminate against any employee in the exercise by the employee of
any right under this chapter [5 USCS §§ 7101 et seq.];

 

(3) to coerce, discipline, fine, or attempt to coerce a
member of the labor organization as punishment, reprisal, or for the purpose of
hindering or impending the member’s work performance or productivity  as an employee or the discharge of the
member’s duties as an employee;

 

(4) to discriminate against an employee with regard to the
terms or conditions of membership in the labor organization on the basis of
race, color, creed, national origin, sex, age, preferential or nonpreferential
civil service status, political affiliation, marital status, or handicapping
condition;

 

(5) to refuse to consult or negotiate in good faith with an
agency as required by this chapter [5
USCS §§ 7101 et seq.];

 

(6) to fail or refuse to consult or
negotiate in good faith with an agency as required by this chapter [5 USCS §§
7101 et seq.];

 

(7)(A) to call, or participate in, a
strike, work stoppage, or to call, or participate in, a strike, work stoppage,
or slowdown, or picketing of an agency in a labor-management dispute if such
picketing interferes with an agency’s operations, or (B) to condone any
activity described in subparagraph (A) of this paragraph by failing to take
action to prevent or stop such activity; or

 

(8) to otherwise fail or refuse to
comply with any provision of this chapter [5 USCS §§ 7101 et seq].

 

5 U.S.C. § 7116(b)(1)–(8).

 

            The union argues that Anderson’s
libel claim alleges an “unfair labor practice” under subsections (5) & (8)
of the statute above.  Regarding
subsection (5), there is no allegation by Anderson that the union failed or
refused to consult or negotiate with her agency, the Social Security
Administration.  Thus, we turn to the
union’s argument that the catch-all provision found in section 7116(b)(8),
which provides that it is an unfair labor practice to fail or refuse to comply
with any provision of this chapter, was triggered by Anderson’s allegation that
the information contained on the union’s website defamed her.

            The union points out that under
section 7102 of the statute, “[e]ach employee shall have the right to form,
join, or assist any labor organization” and that such right includes the right
“to act for a labor organization in the capacity of a representative and the
right, in that capacity, to present the views of the labor organization to
heads of agencies and other officials of the executive branch of the
government, the Congress, or other appropriate authorities.”  5 U.S.C. § 7102(1).  The union argues that to the extent that
Anderson’s petition alleges that the union “exceeded its authority to communicate
views of the labor organization under Section 7101 and 7102,” such action would
be an “unfair labor practice” under section 7116(b)(8).

            The union made a similar argument in
Gutierrez v. Flores.  In Gutierrez,
the union argued that the plaintiff’s defamation suit against several union
officials constituted an allegation of an “unfair labor practice” and should
have been brought pursuant to the grievance procedures in Chapter 71 of the
CSRA.  543 F.3d at 254–55.    The Fifth Circuit disagreed, holding that
“on the face of his well-pleaded complaint, [Gutierrez] alleges that [the union
officials’] letter and e-mail were defamatory and intended to inflict emotional
distress.  Nothing in the CSRA pertains
to this specific scenario.”  Id. at 255.  Because Gutierrez’s complaint did not allege
an “unfair labor practice,” his claim was not preempted by section 7116(b)(8)
of the CSRA.  Id.  The Court also concluded
that the union’s contention that it was exercising its free speech rights might
be a defense to liability on Gutierrez’s libel claim, but it would not serve as
a basis for federal question jurisdiction. 
Id. at 255 n.11.

            The same is true in this case.  Anderson’s complaint, like that in Gutierrez, is that the statements on the
union’s website defamed her and caused her emotional distress.  As noted by the Gutierrez court, “[n]othing in the CSRA pertains to this specific
scenario.”  Id. at 255.  To the extent
that the union is arguing that it was merely exercising its right under section
7102 to communicate the union’s views, such right might be a defense to
liability, but would not confer federal question jurisdiction.  Id. at
255 n.11.[3]  

            The union relies on Montplaisir v. Leighton to argue that
the unfair labor practices provisions of the CSRA preempt Anderson’s state law
claims.  In Montplaiser, four air traffic controllers who were fired for
participating in an unlawful strike filed a legal malpractice suit against the
union lawyers who had assured them during the collective bargaining process
that if they participated in the strike they ran no significant risk of losing
their jobs.  875 F.2d at 1–2.  The court held that that the plaintiffs’
claims raised an unfair labor practices charge under section 7116(b)(7), id. at 3, and that under such
circumstances, the “CSRA necessarily precludes the maintenance of state-law
malpractice claims against lawyers acting as the union’s emissaries in the
collective bargaining process.”  Id. at 8. 

            This case is more like Gutierrez than Montplaisir.  Anderson’s
claim that she was defamed by the information on the union’s website is not
included within the list of “unfair labor practices” set forth in section
7116(b) because “[n]othing in the CSRA pertains to this specific scenario.”  Gutierrez,
543 F.3d at 255.  In contrast, the
plaintiffs’ petition in Monplaisir
alleged an unfair labor practice under section 7116(b)(7), which prohibits
participating or condoning a strike. 
Also, the actions complained of in Montplaisir
were committed during the course of the collective bargaining process.  Such is not the case here.

            Because Anderson’s complaint does not involve a “unfair
labor practice” by the union, section 7116(b)
of the CSRA does not preempt her defamation claim against the union.

CONCLUSION

            Because this case does not involve
an adverse personnel action or an unfair labor practice, the union failed to
satisfy the first prong of the Johnson
test for preemption, i.e., showing that the CSRA contains a civil enforcement
provision that both replaces and protects Anderson’s state law claims.  See
Gutierrez, 543 F.3d at 255–56. 
Therefore, the trial court erred in dismissing her state court claims.

            Accordingly, we reverse the judgment
of the trial court and remand for further proceedings.

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.











[1]           Anderson had previously filed suit in
state court against Stier, alleging that his October 2, 2007 letter about her to
the ODAR’s Office of Special Counsel was libelous.  The State court action was removed to federal
court.  The federal district court
dismissed Anderson’s claims against Stier and substituted the United States as
the defendant pursuant to the Federal Tort Claims Act.  The federal court then  dismissed Anderson’s libel, slander and
defamation claims based on limitations and dismissed her intentional infliction
of emotional distress claim for failure to exhaust her administrative remedies.  The Fifth Circuit recently reversed, holding
that Stier, not the United States, was the proper party because he was acting
outside the scope of his employment when he allegedly defamed her.  See
Anderson v. United States, 364 F.
App’x 920 (5th Cir. 2010).  Because Stier
was the proper party and Anderson filed her claim within the 1-year state of
limitations for defamation claims in the State of Texas, see Tex. Civ. Prac. &
Rem. Code Ann. § 16.002(a), the dismissal based on limitations was also
erroneous. Anderson, 364 F. App’x. at 925.  Similarly, because the United States was not
the proper party, there were no administrative remedies to exhaust before
bringing her intentional infliction of emotional distress claim.  Id.





[2]
          We note that there have been
cases in which a supervisor’s defamation claims against subordinates have been
held to be preempted.  See Schwartz. v. Int’l Fed. of Prof’ls &
Technical Eng’rs, No. 3:07-CV-0978-1, 
2007 WL 3196347 (N.D. Tex. Oct. 31, 2007) (memo op.) (holding that
claims based on alleged defamatory statements made during course of grievance
were preempted by CSRA because, as union representative, subordinate was
recommending personnel action against supervisor by filing grievance);  Greene
v. Am. Fed. of Gov’t Employees, AFL-CIO,
Local 2607, No. Civ. A. 05-0408 RMU, 2005 WL 3275903 (D.D.C. Sept. 7, 2005)
(holding that supervisor’s libel claims against supervisee and supervisee’s
union representative were preempted by CSRA because statements giving rise to
supervisor’s claims were made during course of administrative grievance against
supervisor). Here, the alleged defamatory statements were not made by
Anderson’s subordinate Stier, were not made during the course of any
disciplinary proceedings, and were not made as a part of any recommended
personnel action against anyone.





[3]
          We also note that section 7102
gives employees the right to present “the views of the labor organization to
heads of agencies and other officials of the executive branch of the
Government, the Congress, or other appropriate authorities.” 5 U.S.C. § 7102(1).  There is nothing in the record to show
that the statements on the union’s website were directed to any of the entities
listed in the statute.